HANDLEY et al. v. PALMER et al.

(Circuit Court of Appeals, Third Circuit. June 21, 1900.)

No. 26.

1. WILLS—VALIDITY—WHAT LAW GOVERNS.
 Where a testator, having real and personal estate in Pennsylvania, and his domicile in that state, and having also real estate in Virginia and West Virginia, after certain specific bequests devises all the residue of his estate to a city in Virginia, the validity of such residuary devise, as

respects the real and personal property of the testator in the state of Pennsylvania; is to be determined by the law of that state.

**2. SAME—DIRECTION TO EXECUTORS TO SELL REAL ESTATE—EFFECT.**

A direction to executors, in a will, to sell all of the testator's real estate at the end of 20 years, works a conversion of the testator's real estate, wherever situated, into personalty, as of the date of the testator's death.

**3. SAME—CHARITY—ENFORCEMENT.**

A devise of all the residue of a testator's estate, remaining after payment of certain specific bequests, to a city, "to be expended in said city in the erection of school houses for the education of the poor," is not void for indefiniteness.

**4. SAME—CAPACITY OF CITY TO TAKE.**

Under Code Va. c. 65, conferring on any board of education or other corporation power to take a gift, devise, or bequest for literary or educational purposes, a city whose charter provides that it shall have all such powers as are or may be conferred on the councils of cities and towns having a population of 5,000, by the constitution and general laws of the state, and that the administration and government of said city shall be vested in a board called the "common council," "and such other boards and offices as are now or hereafter may be provided for," and for which a special board of trustees is created by the legislature, to administer the trust created by the will under consideration, is competent to take a bequest for the erection of schools for the education of the poor.

**5. SAME—BEQUEST IN BLANK—EFFECT ON RESIDUARY BEQUEST.**

A will bequeathed "the following sums of money to each of the persons named in Schedule A," and the residue of the estate to a municipal corporation. A paper marked "Schedule A" was found and probated with the will, but was a blank, except as to the following caption: "List of persons to whom bequests in the following amount, and made and intended for Schedule A, mentioned in my last will." *Held*, that the residuary clause was not rendered uncertain because of the incomplete bequest to persons intended to be named in the schedule.

**6. SAME—PERPETUITIES.**

A devise to a municipal corporation for a public use, with direction that the same be sold, and the proceeds invested for a stated number of years, or until the principal, with the accumulations, amounted to a sum named, when it should be applied to the purpose specified in the will, is not invalid because in violation of the rule as to perpetuities, since the whole beneficial interest in the lands, before and after sale, is given directly to the devisee.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

W. H. Jessup and George H. Starr, for appellants.

Henry W. Palmer and Robert M. Ward, for appellees.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

GRAY, Circuit Judge. This suit was instituted to test the validity of the residuary clause of the will of John Handley, who at the time of his death, February 15, 1895, was a citizen of the state of Pennsylvania, and a resident of the city of Scranton, in that state. He left to survive him neither wife nor descendants, and no relatives nearer than first cousins. These first cousins, or twelve of them, were the complainants in this suit. Seven of them live abroad, being residents in Ireland and England. The remaining five are citizens and residents of states in this country other than Pennsylvania. The case was twice argued in the court below, with the result that the decree dis-

missing the bill after the first hearing was affirmed and approved by the final order of the court at the second hearing. 91 Fed. 948. From this decree the complainants have appealed.

The subject-matter of the suit, briefly but sufficiently stated for our purpose, is this: John Handley died at Scranton February 15, 1895. He left a large estate, both personal and real. A great part of his real estate was situated in the city of Scranton, and elsewhere in the state of Pennsylvania; but a portion, consisting of about 15,000 acres of timber and coal land, was situated in the county of McDowell, in the state of West Virginia, and another portion, consisting of about 12,000 acres of land, was situated in Frederick county, in the state of Virginia. He left a will dated December 29, 1890, with a codicil attached thereto, dated July 31, 1893, which were duly probated after his death. By his will he disposed of his entire estate. He ordered and directed his executors to sell and convey all his real estate at the end of 20 years. Among a number of special bequests is one to the city of Winchester, in Virginia, of the sum of $250,000, to be invested in the bonds of the state, at interest, until said sum amounted to $500,000, when it was to be applied to the purposes of the erection and maintenance of a free public library for the people of said city. The other specific bequests made by the testator amount in the aggregate to nearly $100,000. The residue of his estate, after the payment of the above-named specific bequests, was given to the city of Winchester by a clause of his will which reads as follows:

"All the rest and residue of my estate I give, devise, and bequeath to the city of Winchester, Virginia, to be accumulated by said city for the period of twenty years. The income arising from said residue estate to be expended and laid out in said city in the erection of school houses for the education of the poor."

The specific bequests are not controverted by the next of kin of the testator in this suit, who are the appellants here, except in so far as the disposition of the coal and mineral land made in items 14 to 18, inclusive, of the will, is claimed to be in violation of the rule as to perpetuities. The principal question, however, is as to the validity of the residuary clause just quoted, which complainants deny, and aver that the testator died intestate as to all of his estate not needful to carry out the specific bequests therein made.

There are 27 assignments of error, but the questions which underlie them all, and which are necessarily to be considered in the determination of this case, relate to the following contentions of the appellants: (1) That the city of Winchester has not the corporate capacity to take this residuary bequest, or to administer the same for the uses prescribed by the testator, because it is a municipal corporation, and the purpose to which the said residuary bequest is to be devoted is not germane to the functions of the said corporation, or to the objects for which it was created; (2) that the objects or purposes and the particular beneficiaries intended by the provisions of said residuary clause are so uncertain and undefined as to invalidate this bequest, even under Virginia law and decisions; (3) that the subject-matter of the residuary clause is rendered uncertain because of the effect upon it of item 9 of the will, which includes Schedule A; (4) that the dispo-

sition made of the coal and mineral lands in items 14 to 19, inclusive, and the disposition of the residuum of said estate made in the said residuary clause, is in violation of the rule as to perpetuities. These contentions were all considered and discussed by the court below, and decided adversely to the next of kin, the appellees in this case, and the validity of the will, as a whole, was sustained. At the threshold of the discussion of these contentions, it is necessary to inquire what law is applicable to their determination,—the law of Pennsylvania or the law of Virginia. As to this, we cannot do better than to quote the language of the learned judge of the court below:

"It is clear that, as respects all the testator's personal estate and his real estate situated in the state of Pennsylvania, the validity of the residuary clause is to be determined by the law of Pennsylvania; the testator's domicile having been there at the date of his will and at the time of his death. Desesbats v. Berquier, 1 Bin. 336; Freeman's Appeal, 68 Pa. St. 151; Magill v. Brown, 16 Fed. Cas. 408, Brightly, N. P. 347; Jones v. Habersham, 107 U. S. 174–179, 2 Sup. Ct. 336, 27 L. Ed. 401. In Magill v. Brown, supra,—a case relating to bequests to charitable uses under the will of Sarah Zane,—Mr. Justice Baldwin, sitting at circuit in this state, held that, the domicile of the testatrix being here, the law of this state governed her real estate situated here, and (curiously enough) sustained a bequest 'to the citizens of Winchester,' Virginia, to purchase a fire engine and hose, and a bequest 'to the select members belonging to the monthly meeting of women friends held at Hopewell, Frederick county, Virginia,' the interest to be applied 'towards the relief of the poor belonging thereto.' In Jones v. Habersham, supra, which involved charitable devises and bequests, the supreme court of the United States said that the validity of the devises, 'as against the heirs at law, depends upon the law of the state in which the land lies, and the validity of the bequests, as against the next of kin, upon the law of the state in which the testatrix had her domicile.' It is to be observed that under the will of John Handley no real estate anywhere is devised to the city of Winchester. By the express direction and order of the testator, contained in his will, his entire real estate, wherever lying, is to be sold by his executors. This direction, by the settled law of Pennsylvania, worked a conversion of the testator's real estate, wherever situated, into personalty, as of the date of his death. Dundas' Appeal, 64 Pa. St. 325; Roland v. Miller, 100 Pa. St. 47; Miller v. Com., 111 Pa. St. 321, 2 Atl. 492; In re Williamson's Estate, 153 Pa. St. 508, 26 Atl. 246. The plaintiffs' counsel, as I understand them, concede that the power of sale given to the executors is mandatory, and worked an equitable conversion of the testator's real estate everywhere, if the residuary clause is valid. In their brief they say: 'The property which is subject to the residuary clause or gift [item 28 of will] is to be regarded as personal property, in order to determine the validity of the residuary bequest. * * * If the bequest be held valid, the fund is to be decreed personal property, and passes to the city of Winchester as such. If invalid or void, then, the purpose of the conversion having failed, the conversion of the real estate does not take effect, and the real estate retains its original character for the benefit of the heirs.' The plaintiffs' counsel further contends that 'the question of the validity of the residuary legacy is to be determined mainly by the laws of Virginia.'"

We do not find that the law of Pennsylvania differs from the law generally obtaining in regard to the competency of a municipal corporation to take property and act as trustee thereof. What may be said to be the common law of the states of this country, as well as of England, in this regard, is that a municipal corporation may take property in trust for purposes of a public nature germane to the objects of the corporation. Educational purposes are public purposes, and are not to be considered unrelated to the objects of a municipal corpora-

tion, unless made so by the general statute laws of the state, or excluded from the purposes for which the particular corporation was created by the law of its creation. That such is the law of Pennsylvania is abundantly established by the decisions of the supreme court of that state, which were cited, discussed, and approved by the learned judge of the court below. 2 Dill. Mun. Corp. (2d Ed.) § 437; Philadelphia v. Fox, 64 Pa. St. 169; Mayor, etc., v. Elliott, 3 Rawle, 170; Cresson's Appeal, 30 Pa. St. 437; Vidal v. Girard, 2 How. 127, 11 L. Ed. 205. Gifts for public uses, generally recognized as benevolent, have always been highly favored by the courts of the United States and the different states, without regard to the existence or nonexistence of statutes of charitable uses similar to that of 43 Eliz. Indeed, in all countries, as they have come under the influences of the Christian religion, there has been a recognition, to some extent, of the duty of fostering and protecting such gifts. What may be called the doctrine of charitable uses, as developed in the decisions of English and American courts, and by approved text writers, is familiar learning, and has settled with sufficient and admirable clearness the equitable grounds upon which such uses are sustained. Many testamentary provisions for benevolent purposes appeal only to the ordinary rules applicable to the creation and administration of trusts; "but a trust which, according to those rules, would fail for uncertainty, is upheld in chancery when the beneficiaries are objects of charity, and is then a charitable use." Bisp. Eq. 116. Since the great case of Vidal v. Girard, 2 How. 128, 11 L. Ed. 205, the peculiar chancery jurisdiction over such trusts has been generally recognized as owing its origin, not so much to the statute of 43 Eliz., known as the "Statute of Charitable Uses," as to an inherent power independent of that statute, the exercise of which was demanded by the humanity of an advancing civilization. The statute of 43 Eliz. c. 4, concerning charitable uses, was never adopted by either the colony or state of Pennsylvania; and, though no separate court of chancery has ever existed within that state, the doctrine of charitable uses is recognized in the jurisprudence of the state, and enforced when a devise or gift might otherwise fail by reason of the want of a trustee capable of taking, or by reason of the uncertainty of the objects of the testator's bounty. In Domestic & Foreign Missionary Societies Appeal, 30 Pa. St. 425, 535, the supreme court of Pennsylvania says:

"In the case of a will making a charitable bequest, it is immaterial how vague, indefinite, and uncertain the objects of the testator's bounty may be, provided there is a discretionary power vested in some one over its application to those objects."

Witman v. Lex, 17 Serg. & R. 88; Pickering v. Shotwell, 10 Pa. St. 23; Magill v. Brown, 16 Fed. Cas. 408; Lawrence Co. v. Leonard, 83 Pa. St. 206; In re Trim's Estate, 168 Pa. St. 395, 31 Atl. 1071; Philadelphia v. Fox, 64 Pa. St. 169.

Bispham, in his Principles of Equity, already referred to, in describing and seeking to define charitable uses, says:

"Uncertainty in the object is one of the characteristics of a true, technical, charitable use, because, if the beneficiaries are defined with precision, the ordinary doctrines of equity, which have been already referred to, would be sufficient to support it." Page 178.

And·in Philadelphia v. Fox, 64 Pa. St. 169, the supreme court of that state, speaking in the same way of a charitable trust, said, "Indefiniteness is of its essence."

There can be no doubt that the gift in the residuary clause of John Handley's will is valid, so far as the ascertainment of the objects of his bounty is concerned. The thing to be done (the erection of school houses), and those for whom it is to be done (the poor), are not sufficiently indefinite and uncertain to invalidate the trust under the law of charitable uses obtaining in Pennsylvania. The gift is to the city of Winchester, and, as the fund is to "be expended and·laid out in said city," "the poor" for whose benefit the gift is made are presumably the poor of that city

The policy in respect to charitable bequests, so well established by the decisions of the courts, is emphasized by the act of the assembly of Pennsylvania of 1855, by which it is provided that "no disposition of property  *  ·  *   *   for any charitable, educational," etc., "purpose, shall fail  *  *  *  by reason of the objects being indefinite or uncertain," etc. The subsequent acts of 1885 and of 1889 do not affect this policy, as declared by the statute of 1855, or the powers of the court, so far as they have any bearing on the present case.

This bequest, then, being valid in Pennsylvania, in so far as its objects and purpose are concerned, our next inquiry is as to the competency of the city of Winchester, Va., to take the property bequeathed, and administer the trust with which it is impressed. We have already seen that in Pennsylvania a municipal corporation may take property in trust for purposes of a public nature germane to the objects of its incorporation, and that educational purposes are public purposes. Are the general purposes of the municipality of Winchester, as existing under the laws of Virginia, such as to include or exclude the administration of educational charities or trusts? The court of appeals of Virginia, in the case of City of Winchester v. Redmon, 93 Va. 711, 25 S. E. 1001, has made this statement as to the powers of a municipal corporation:

"A municipal corporation has no powers except those conferred upon it, expressly or by implication, by its charter or the general laws of the state, and such other powers as are essential to the attainment and maintenance of its declared purposes."

Accepting this statement of the limitations of municipal power, we find that the legislature of Virginia, in the charter conferred on the city of Winchester, has provided, among other things, as follows:

"Sec. 2. The administration and government of said city shall be vested in  *  *  *  a board, called the common council,  *  *  *  and such other boards and offices as are now or hereafter' may be, provided for." Laws 1874, p. 164.

In accordance with this section, and upon the recommendation of the common council, the legislature, by an act passed February, 1896, created the "board of Handley trustees," as a special department of the municipality of Winchester, to administer the trust contained in the residuary clause of John Handley's will. If the bequest contained in this residuary clause is, as to form and substance, valid under the laws of Pennsylvania, this act of the legislature of Virginia was op-

erative and efficient for the purposes for which it was passed. But, independently of this special act, section 9 of its charter provides that the council of the city of Winchester, in addition to many other powers, some of which would seem sufficiently broad to include the taking and administration of this trust, "shall have all such other powers as are or may be conferred on the councils of cities and towns having a population of five thousand, by the constitution and general laws of the state." Chapter 65 of the Virginia Code confers upon any "board of education, or any other corporation, or any county, or natural person," the power to take a gift, grant, devise, or bequest for literary or educational purposes. Further reference might be made to the constitutional and legislative provisions for the establishment and maintenance of free schools, which in some respects require and make use of the agency of the municipal corporations of the state in the administration of the free-school system. It is not necessary, however, to set out and consider in detail the legislation of Virginia, bearing on this subject. Sufficient has been said to indicate the ground of our opinion that under the laws of Virginia the city of Winchester was competent to take the bequest, and administer the trust set out in the residuary clause of the will before us.

The only remaining contention of appellants requiring serious consideration is that the subject-matter of the residuary clause is rendered uncertain, because of the effect upon it of item ninth of the will, which includes Schedule A. Item ninth of the will, referred to, is as follows:

"Item. I also give and bequeath the following sums of money to each of the persons named in Schedule A, which schedule is hereby made a part of this my will, the same as if the name of each person was named herein. And I direct my executors to pay the said several bequests to each person, if living at the time of my demise, or when such bequest shall fall due, within two years from the day of my death."

A paper marked "Schedule A" was found and probated with the will. It was never completed, and is a blank, except as to the caption, which reads as follows:

"Schedule 'A.' List of persons to whom bequests in the following amount, and made and intended for Schedule A, mentioned in my last will, dated the 29th day of December, A. D. 1890."

The substance of the argument of appellants in this contention is that the testator, by referring to a schedule which was to contain the names of legatees, and the amounts severally bequeathed to each, showed that he had in mind, when he drew his will, certain legacies which, in addition to those already specifically named, were to be subtracted from his estate before the "rest and residue" of the residuary clause could be computed and made available as a residuary bequest; that, in other words, this was a particular, and not a general, residuary bequest, and, as there was and could be no ascertainment of what was in his mind as to the amounts to be given under Schedule A, there could be no ascertainment of the particular residuum. It is well settled that where, after specific legacies of named amounts, a testator makes a particular residuary bequest, the failure of one or more of such specific legacies by reason of lapse, or for any reason, does not carry the amount of such bad legacy to the residuary legatee, but to,

the next of kin. And this should be so, because it is evident that the testator, when he carved out of his personalty these legacies, made his residuary bequest with reference to them, and intended a particular residuum remaining after the deduction of the sums certain, as indicated by him. In the case before us, however, whatever may have been in the mind of the testator at the time he drew his will, he left Schedule A blank when he executed it. If he had intended to make the list of legatees and legacies alluded to in item ninth, he must afterwards have changed his mind, and, with only the specific legacies named to be taken from the corpus of his estate, gave the rest and residue as appears in the will. It is not the case of a named amount which the testator referred to in making a gift of the balance, and which therefore could not be incorporated in such balance, but a failure to name any amount in this paper, by which the residuum was to be diminished. Not only did the testator execute his will, leaving blank this paper called "Schedule A," but three years and a half after its execution he executed a codicil thereto, in which he changed one of the executors of his will, but in all other respects expressly confirmed the same. As the will stands, he has never said that he intended to take from the corpus of his estate any sum or sums, other than the specific bequests to named legatees, and for named amounts. Neither by reason nor by authority is the contention of the appellants in this regard sustained. "Plainly," in the language of the learned judge of the court below, "no effect whatever is to be given to this unfilled and unsigned separate sheet of paper, designated 'Schedule A.'" Taking the view that there was a general equitable conversion of all the testator's real estate into personalty, for the purposes of the will, and therefore that the validity of the residuary clause of the will must be determined by the law of Pennsylvania, it will not be necessary to extend this opinion by an examination of the question, whether this gift of the residuum is valid by the law of Virginia. It suffices to say that, after a careful consideration of the decisions of the Virginia courts, and the legislation of the state bearing upon the question, and the argument of counsel thereon, we have no doubt of the validity of the bequest when considered with reference to the law of either state.

Finally, as to the objection that the disposition of the mineral and timber lands in items 14 to 18, inclusive, as well as the disposition of the residuum, is in violation of the rule as to perpetuities, we have only to say that the whole beneficial interest in the lands, before and after the sale, is given directly to the city of Winchester. It is only the enjoyment of the fund arising from the sale of the corpus of the gift that is postponed for 20 years. There is no intermediate beneficial interest or estate, and after the vesting of a charitable use the rule as to perpetuities does not apply. We agree with the court below in saying that "we are not able to see that there is anything in the will of John Handley in unlawful restraint of alienation, or any trust for forbidden accumulations," and that "with these questions, however, the heirs and next of kin have no concern." The decree of the court below is affirmed.