## NELSON, ADMINISTRATOR, v. NELSON ET AL.

[No. 5,084. Filed October 24, 1905.]

1. WILLS.—*Estates Created.—Life Tenancy.*—A will devising all of testator's real estate to his widow "to have and to hold the same during" such widow's natural life, creates a life estate in such widow. p. 335.

2. SAME.—*Devise of Real Estate.—Direction to Convert into Money. — When Conversion Takes Place.* — Where testator devises his real estate to his widow for life, with a direction to his executor to convert such real estate into cash upon the death of such widow, an equitable conversion of such real estate takes place at the death of the testator. p. 336.

3. EQUITY. — *Maxims. — Wills. — Equitable Conversion.* — The equitable maxim, "Equity considers that as done which is required to be done," applies to the conversion of real estate at the direction of testator in his will, and requires such real estate to be considered as money after such direction takes effect. p. 336.

4. WILLS. — *Remainders.* — *Vesting.* — *Equitable   Conversion.* —
*Power of Disposal.*—Where testator devises his real estate to
his widow for life, remainder to be converted into money at her
death and divided equally among his children, such remainder
vests at testator's death, and such children have power to dis-
pose of their interests thereafter.   p. 337.

5. SAME.—*Remainders.*—*Vesting.*—Where testator devises a life
estate in his real estate to his widow, remainder to be converted
at her death into money and an "equal division be made among
all my children," such remainder vests at testator's death, and
the remaindermen consist of testator's children at his death.
p. 337.

6. ESTATES.—*Remainders.*—*Vested   or   Contingent.*—*Rule.*—The
right and capacity of a remainderman, if possession were to
become vacant, and the certainty that the event, upon which
the vacancy depends must happen sometime, and not that it will
happen in the lifetime of the remainderman, determines whether
a remainder is vested or contingent.   p. 338.

7. WILLS.—*Remainders.*—*Direction to Executor to Sell Lands.*—
*Title.*—Where a testator devises his lands to his widow for life
and directs his executor at her death to sell such lands and
divide the money equally among his children, such children take
title to such remainder at testator's death and such executor
has a mere naked power to sell.   p. 339.

8. SAME.—*Estates.*—*Vesting.*—*Doubts.*—Where from the lan-
guage of the will there is doubt as to when estates devised
thereby vest, or where the contrary does not appear, such
devised estates vest at testator's death.   p. 339.

9. SAME.—*Remainders.*—*Vesting.*—*Devise of.*—Where testator
devised his real estate to his widow for life, remainder to be
sold by his executor at her death and divided equally among his
children, and testator died in 1890, and one of his six children
died testate in 1902, devising her share to her husband, such
husband took the one-sixth part of the money received by such
executor from the sale of such land.   p. 340.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Petition by John C. Nelson as administrator of the estate
of John Entsminger, deceased, to which Sarah H. Nelson
and others were made parties.   From a decree rendered,
petitioner appeals.   *Affirmed.*

*John A. Kersey,* for appellant.
*St. John & Charles,* for appellee.

MYERS, P. J.—Appellees have interposed a motion to dismiss this appeal, which, after due consideration, we have concluded to overrule.

The merits of this controversy arise upon a petition by appellant, filed in the court below, to have the will of John Entsminger construed, and for directions in the distribution of his estate. Sarah H. Nelson and others, including Simon B. Kennedy, were made defendants.

The material facts, so far as this appeal is concerned, are as follows: On January 20, 1890, John Entsminger died testate, the owner of certain property in the town of Jonesboro, and certain farm lands, all in Grant county, Indiana. "At his death his children were Sarah H. Nelson, Matilda J. Lucas, Rebecca Y. Robbins, John W. Entsminger, Rose M. Kennedy and Emma C. Brooks." That part of his will asked to be construed reads as follows:

"Item One. To my beloved wife, I will during her natural life, all my real estate in the county of Grant and State of Indiana, and is described as follows: [Then follows a description of a 50-acre tract of land, also a 157-acre tract, also two tracts of land in the town of Jonesboro.] To have and to hold the same during my beloved wife's natural life.

"Item Two. I further will and bequeath to my beloved wife all my personal property of every kind, and hereby empower her, my said wife, to collect all claims, consisting of notes, accounts, rents, profits and choses in action that are due me, or may become due to me, at the time of my death, and I further empower my wife and give her full authority to collect, as aforesaid, and pay off and take receipts for all my just debts that I may be owing at the time of my death, and in the event my personal property should be insufficient to pay all my just debts that I may be owing at my death, I hereby empower my wife and give her full power to sell and convey and make title to a sufficient amount of my real estate out of that tract of land first described above, being

fifty acres formerly described and purchased by me of
Philip Matter. I further will that my beloved wife shall
act as executrix of all the foregoing will, and that she take
charge of and transact all of the foregoing business as I
have directed the same to be done, without giving bond.

"Item Three. I further will that at the death of my be-
loved wife that what remains of my estate at the death of
my said wife that there be paid to my youngest daughter,
Emma C., the sum of $500 to make her part equal with
what my other children have already received. I then di-
rect and will that after said $500 is paid to my said daugh-
ter that all of my estate both real and personal that may be
left at the death of my beloved wife be sold and converted
into money and out of said money so realized that all just
debts which my said wife may during her life have con-
tracted be paid and that said $500 above mentioned be
paid to my said daughter Emma out of said money first,
and then after said amounts are paid, whatever amount
that may be left I will and bequeath that an equal division
be made among all my children share and share alike, each
one including my daughter Emma taking an equal share of
said remainder."

Item four provides for the purchase of a monument to
"be paid out of the remainder of my estate before the final
and last divide is made," and John C. Nelson is appointed
executor. About three years after the death of John Ents-
minger, his daughter Rose M. Kennedy died testate, leav-
ing no children, nor descendants of any children, but leav-
ing Simon B. Kennedy her surviving husband. The item
of her will purporting to affect her interest in the estate of
her father is in the words and figures following, to wit:

"Item Five. I will and devise to my husband, S. B.
Kennedy, all my interest and right in the real estate to
which I now have an interest in subject to a life estate of my
mother, and which real estate is situated near Gas City,
Indiana, and known as the John Entsminger farm, con-

sisting of about 207 acres. Should the same be sold during my life, then, in that event, I direct that the proceeds of such sale as to my interest therein, shall go to my husband, S. B. Kennedy."

Martha Entsminger, the widow of said John Entsminger, died July 7, 1902, and at her death the only surviving children of John Entsminger were Sarah H. Nelson, Matilda J. Lucas, Rebecca Y. Robbins, John W. Entsminger and Emma C. Brooks. Simon B. Kennedy is still living, and is the surviving husband of said Rose M. Kennedy, and her only heir, devisee and legatee.

The above and other facts, the latter not material to this appeal, were agreed upon in the court below, and submitted to the trial court for decision. The lower court found that the remainder of said John Entsminger's estate should be distributed, one sixth to each of the surviving children at the death of the widow, Martha Entsminger, and one sixth to Simon B. Kennedy. Judgment accordingly.

The errors assigned in this court are: (1) "The court erred in overruling the motion for a new trial," and (2) "the court erred in its decision that Simon B. Kennedy is entitled to share in the distribution of the money to arise from the sale of the real estate of John Entsminger, deceased."

The real estate of John Entsminger having been reduced to cash, the question here presented is: What interest, if any, has Simon B. Kennedy in the proceeds arising from the sale of the same?

The weight of authority, as established by the decisions of the appellate tribunals of this State, fixes the interest of the widow of John Entsminger in his lands as a life estate, except that portion of the fifty-acre tract authorized to be sold, if necessary, to pay his debts. *Pate* v. *Bushong* (1903), 161 Ind. 533, 63 L. R. A. 593, 100 Am. St. 287; *Fenstermaker* v. *Holman* (1902),

158 Ind. 71; *Mulvane* v. *Rude* (1896), 146 Ind. 476; *Fuchshuber* v. *Krewson* (1904), 33 Ind. App. 257; *Crew* v. *Dixson* (1891), 129 Ind. 85; *Rumsey* v. *Durham* (1854), 5 Ind. 71.

The principal contention between the parties to this appeal calls for a construction of item three of the Entsminger will. By this item testator made it obligatory on his executor, at the death of the life tenant, to convert all of his estate then remaining into money; and, this being true, the weight of authority seems to be that an equitable conversion of testator's real estate took place at the time of his death, and such conversion will not be postponed by the fact that the land is not to be sold until after the death of the life tenant. *Rumsey* v. *Durham, supra; Allen* v. *Watts* (1902), 98 Ala. 384, 11 South. 646; *Cook* v. *Cook* (1869), 20 N. J. Eq. 375; *Handley* v. *Palmer* (1900), 103 Fed. 39, 43 C. C. A. 100; *Thomman's Appeal* (1894), 161 Pa. St. 444, 29 Atl. 84; *Jones* v. *Caldwell* (1881), 97 Pa. St. 42; *Lent* v. *Howard* (1882), 89 N. Y. 169; *Fisher* v. *Banta* (1876), 66 N. Y. 468, 477; *Dodge* v. *Williams* (1879), 46 Wis. 70, 97, 1 N. W. 92; *Hammond* v. *Putnam* (1872), 110 Mass. 232; *Dodge* v. *Pond* (1861), 23 N. Y. 69; *McGowan* v. *Tifft* (1901), 72 N. Y. Supp. 132; *Chick* v. *Ives* (1902), 2 Neb. (Unofficial) 879, 90 N. W. 751; *Greenwood* v. *Greenwood* (1899), 178 Ill. 387, 53 N. E. 101; *Shaw* v. *Chambers* (1882), 48 Mich. 355; *Collier* v. *Collier* (1854), 3 Ohio St. 369; *McCormick* v. *Cantwell* (1835), 15 Tenn. *614; *Craig* v. *Leslie* (1818), 3 Wheat. 563, 4 L. Ed. 460; *Loftis* v. *Glass* (1855), 15 Ark. 680.

It is the direction of the testator that the conversion shall be made which supports the fiction, and not the actual change of the property into money. Such fiction rests upon the maxim, "Equity considers that as done which is required to be done." Therefore, in the consideration of this case, the land must be considered

as money, because there is nothing in the will indicating the intention of the testator to give to his children anything but money.

Upon the theory of a conversion of testator's land into money at the time of his death, our next inquiry, and the one most vital in the decision of this cause, is:

4. When did the property vest in the children, or what title did they have at the death of the testator? The courts of last resort in the various states are not in full accord as to the answer to this question. In this State our Supreme Court has adopted the rule that, although the land shall be considered as having been converted into personalty from the date of the testator's death, yet, during the interim between the death of the testator and the time fixed for the actual appropriation and reduction of the land to money, residuary beneficiaries have a vested interest, which is subject to disposition by them. *Rumsey* v. *Durham, supra; Doe* v. *Lanius* (1852), 3 Ind. 441, 56 Am. Dec. 518; *Brumfield* v. *Drook* (1885), 101 Ind. 190; *Ballenger* v. *Drook* (1885), 101 Ind. 172; *Simonds* v. *Harris* (1884), 92 Ind. 505; *Wilson* v. *Rudd* (1862), 19 Ind. 101; *Indiana R. Co.* v. *Morgan* (1904), 162 Ind. 331. Other courts sustain the doctrine of a vested interest. *Allen* v. *Watts, supra; Loftis* v. *Glass, supra; Thomman's Appeal, supra.*

Counsel for appellant ably and adroitly contend that if the bequest to the children was money or personalty it was a gift to them as a class, and their rights became

5. vested at the time of distribution, upon the theory that the will in this case simply gives a direction to divide the property at a specified time, and not until that time does the property vest. It is true there are cases supporting appellant's theory, but, in the light of the authorities we have cited, we can not affirm appellant's contention.

The rule in this State seems to be "that the right and capacity of the remainderman to take possession of the estate, if the possession were to become vacant, and the certainty that the event upon which the vacancy depends must happen sometime, and not the certainty that it will happen in the lifetime of the remainderman, determine whether or not the estate is vested or contingent." *Hoover* v. *Hoover* (1889), 116 Ind. 498; *Bruce* v. *Bissell* (1889), 119 Ind. 525, 12 Am. St. 436; *Heilman* v. *Heilman* (1891), 129 Ind. 59; *Corey* v. *Springer* (1894), 138 Ind. 506.

In *Thomman's Appeal, supra,* the court announced a rule applicable to the case at bar. In that case the will provided that the farm should not be sold during the life of the widow, "but after her death it shall be sold at public sale, and the proceeds thereof shall be equally divided between my children, share and share alike." The court in construing this will said: "It is clear the only purpose of postponing the sale and distribution was for the benefit of his wife, and not on account of anything that affected the children so as to cause him to attach any condition to the legacies. If his wife had not been living there would doubtless have been an immediate distribution to his children, but the testator intended a postponement of the legacies, as stated, 'if she survive me,' and this postponement was only on account of, and for the benefit of the widow. The distribution after death of his wife was not directed on account of the age or character of the legatees, but for the advantage and benefit of his widow," and held that there was not only a conversion of the land at testator's death, but that the children took a vested interest at his death. To the same effect is the holding of the court in the cases of *Brumfield* v. *Drook, supra; Ballenger* v. *Drook, supra; Knight* v. *Pottgieser* (1898), 176 Ill. 368, 52 N. E. 934.

In *Hammond* v. *Putnam, supra,* in construing a will very similar to the one now under consideration, and where all the residuary legatees were living at the time of testator's death, as in this case, and where one of such legatees died soon after the testator, but before distribution, the court held that the interest of the deceased legatee was a bequest of personal property, and "had all the incidents of property of that character, and upon her death" was to be distributed as her personal estate, and went to her husband as administrator.

In the case at bar, had the lands been devised to the executor named, with a direction to sell the same and divide the proceeds, then we would have a different proposition; but, as the direction to the executor is to convert the real estate into money, and after the payment of certain sums to distribute the balance among all of his "children, share and share alike," we must conclude, under our decisions, that the executor did not take the title to the lands, but his interest was limited to a naked power to sell the property and distribute the proceeds as the will directs. *Brumfield* v. *Drook, supra.*

"In the one case it is held that the executor is the custodian of the title until divested by the sale, while in the other the title is held to be in the beneficiary or the heir until the sale is made." *Bowen* v. *Swander* (1888), 121 Ind. 164, 170.

There is also another settled principle of law in this State, that if there be a doubt from the language of the will as to when the testator intended the property to vest in his residuary legatees (and there seems to be such doubt in this case), or, in the absence of a manifest intention to the contrary, the property will be held to vest at testator's death. *Moores* v. *Hare* (1896), 144 Ind. 573; *Aspy* v. *Lewis* (1899), 152 Ind. 493; *Burke* v. *Barrett* (1903), 31 Ind. App. 635; *Kilgore* v. *Kilgore* (1891), 127 Ind. 276.

The time when the estate vested in the children is the controlling question in the case at bar, and as we have concluded that time to be at the death of testator, and Rose M. Kennedy being at that time alive and of the class entitled to take under the will, our conclusion must be that she took a vested interest at her father's death, "subject to the widow's life estate and the executor's power of sale under the will," and that her husband, Simon B. Kennedy, under the facts stated, is entitled to share in the distribution of the proceeds arising from the sale of the real estate, as decreed by the trial court.

Judgment affirmed.