DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1916

---

### Ida Henderson and Hazel Ross, Defendants in Error, v. Jesse K. Cadwalader et al., Plaintiffs in Error.

1. REMAINDERS, § 1*—*when remainder is contingent.* A contingent remainder is one limited to take effect either to an uncertain person or upon an uncertain event.

2. REMAINDERS, § 1*—*when remainder is vested.* Whenever the person who is to succeed to an estate in remainder is in being and is ascertained, and the event, which by express limitation will terminate the precedent estate, is certain to happen, the remainder is vested.

3. REMAINDERS, § 6*—*what is nature of uncertainty making remainder contingent.* The uncertainty which distinguishes a contingent from a vested remainder is not the uncertainty whether the remainderman will live to enjoy the estate, but whether he will ever have the right to such enjoyment.

4. WILLS, § 226*—*how construed.* In construing a will, it is the duty of the court to ascertain the intention of the testator as expressed in the instrument, and to so construe it as to give effect to that intention, if it can be done without violating any established rule of law or public policy.

5. WILLS, § 379*—*how construed as to vesting of estates.* The law favors the vesting of estates, and will construe the terms of a will as creating a vested estate if possible.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

6. CONVERSION, § 1*—*what is equitable conversion.* Equitable conversion is a constructive alteration in the nature of property by which in equity real estate is regarded as personalty or personal estate as realty.

7. WILLS, § 323*—*when direction to sell real estate works equitable conversion.* Where a testator devised real estate to his wife with instructions to his executors to sell it on the wife's death and distribute the proceeds in specified portions to his named children and grandchildren, without making any provision as to distribution in case of the death of any of such beneficiaries prior to that of the wife, and with power in the executors to sell the real estate, *held* that on the death of the testator there was an equitable conversion of the real estate into personalty, that the shares of the legatees thereupon vested in them so that the shares of legatees who died after the death of the testator and before the death of the wife should, on the latter's death, be distributed as intestate personalty to the personal representatives of such legatees where not otherwise provided by the will.

Error to the Circuit Court of Jersey county; the Hon. FRANK W. BURTON, Judge, presiding. Heard in this court at the April term, 1916. Affirmed. Opinion filed October 13, 1916.

FRED A. DU HADWAY, P. M. HAMILTON and W. J. CHAPMAN, for plaintiffs in error.

THOMAS F. FERNS and SUMNER & REARDON, for defendants in error.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

Ida Henderson and Hazel Ross filed a bill in chancery against Jesse K. Cadwalader and Joseph G. Marston, executors of the last will of John Cadwalader, deceased, and others, being all the parties interested in said will, praying for a construction of the will.

John Cadwalader died November 30, 1880, leaving a will which was admitted to probate in the County Court of Jersey county December 20, 1880. Jesse K.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Cadwalader and Joseph G. Marston were nominated executors and duly qualified. The controversy arises over what is the proper construction to be given to the second paragraph of the will. The second and fourth paragraphs are as follows:

"Second—After the payment of such funeral expenses and debts, I give, devise and bequeath unto my beloved wife, Mary Cadwalader, the farm on which I now reside, being the East Half of the North-West Quarter of Section No. Thirteen, and the West Half of the Northeast Quarter of Section No. Thirteen, all in Township No. Seven North, Range No. Twelve, West of the Third Principal Meridian in the County of Jersey and State of Illinois, and the Northeast Quarter of the Southwest Quarter of Section No. Seventeen in Township No. Seven, North, Range No. Eleven, West of the Third Principal Meridian in said County and State, to have and to hold the same during her natural life; also all the personal property by me owned at the time of my decease, after having disposed of a sufficient amount to pay and discharge the expenses and debts aforesaid. And at the death of my said wife I order and direct my said executors to sell at public or private sale, as they may deem most advantageous, the said real estate above described,—and divide the proceeds as follows:—To my daughter, Ruth Noble, one-sixth. To my son, Jesse K. Cadwalader, one-sixth. To my daughter, Adaline Marston, one-sixth. To my daughter, Mary A. Terry, one-sixth. To my daughter, Nancy Henderson, one-sixth. And the remaining one-sixth to be disposed of as follows: Two Hundred Dollars of the same to be paid to my son, Eli B. Cadwalader in cash, and the remainder to be loaned out at the best rate of interest by my said executors and the interest of the amount so loaned to be paid annually to my said son, Eli B. Cadwalader by my said executors during the life of said Eli B. Cadwalader, and at the death of the said Eli B. Cadwalader the amount so loaned, together with the interest that may be due or accrued at the time of the death of the said Eli B. Cadwalader, to be distributed

as follows: One Hundred Dollars to be paid to Elmer E. Cadwalader, son of the said Eli B. Cadwalader, and One Hundred Dollars to be paid to Calvin Cadwalader, son of the said Eli B. Cadwalader, and One Hundred Dollars to be paid to Eva L. Cadwalader, daughter of the said Eli B. Cadwalader, and the remainder to be distributed equally between the sisters and brothers of the said Eli B. Cadwalader, and if any of the sisters or brothers of the said Eli B. Cadwalader shall die before the said Eli B. Cadwalader, the portion that the deceased sister or brother would have received if living shall be paid to the heirs of such deceased sister or brother:—''

"Fourth—I order, direct and empower my said executors to sell the whole or any part of the said real estate mentioned in this my last will and testament for cash or on time or for part cash and part on time as they may think best. And I hereby authorize and empower my said executors to execute and deliver deed or deeds of conveyance for any or all of the aforesaid mentioned real estate to the purchaser or purchasers thereof."

The testator left surviving him Mary Cadwalader, his widow, Jesse K. Cadwalader and Eli B. Cadwalader, his sons, and Ruth Noble, Adaline Marston, Mary A. Terry and Nancy Henderson, his daughters.

Nancy Henderson, one of the legatees, died December 25, 1885, leaving surviving her, her husband Frank Henderson and a daughter Addie, who was a little child. Addie died May 26, 1886, leaving her father, Frank Henderson, surviving her. Thereafter Frank Henderson married Ida Henderson and to this marriage was born one child, Hazel. Frank Henderson died December 28, 1892, leaving surviving him his widow Ida Henderson and his daughter Hazel, now Hazel Ross, who are the complainants.

Eli B. Cadwalader, the legatee, whose legacy was given in trust as appears from the latter part of the second paragraph of the will, died intestate in 1900,

leaving surviving him Maggie Cadwalader, his widow,
and Elmer E. Cadwalader, Calvin C. Cadwalader, Eva
L. Steed, Frank Cadwalader, Lena Cadwalader, May
Cadwalader and Ruth Cadwalader, his children. Maggie Cadwalader died October 30, 1914; she was the
third wife of Eli B. Cadwalader and the mother of his
children, Frank, Lena, May and Ruth.

Adaline Marston, one of the legatees mentioned in
the will, died intestate May 11, 1908, leaving no child
or descendants surviving her, but only her husband
Joseph G. Marston, and her mother Mary Cadwalader,
her brother Jesse K. Cadwalader, and her sisters
Ruth Noble and Mary A. Terry, and the children of
Eli B. Cadwalader, her deceased brother.

Mary Cadwalader, the widow of John Cadwalader,
the mother of all his children and the life tenant of
his estate, died January 8, 1914.

The complainants contend that by the direction in
the will to the executors to sell the real estate and
divide the proceeds there was an equitable conversion
of the real estate at the death of the testator, and
that the interests of the beneficiaries vested at the
death of the testator, the possession only being postponed until the death of the life tenant; that such
interests being vested, the bequest to Adaline Marston
became vested at her death in her husband Joseph G.
Marston; that the bequest to Nancy Henderson, by
her death, became vested in her husband Frank Henderson and her daughter Addie, and by the death
of Addie, all the bequest to Nancy became vested in
Frank Henderson, and by his death the bequest to
Nancy Henderson became vested in his surviving
widow and daughter, the complainants. The contention of defendants is that the legacies to Frank Henderson and Adaline Marston were not vested in them
respectively at the time of their respective deaths,
and that Ida Henderson, Hazel Ross and Joseph G.

Marston are not entitled to share in the proceeds of the real estate described in the will.

The chancellor entered a decree finding the facts as stated; that Mary Cadwalader took a life estate in the said real estate; that under the clause in the will directing the executors to sell the real estate and distribute it after the death of Mary Cadwalader, the real estate will in equity be considered as converted at the time of the death of the testator; that Jesse K. Cadwalader, Adaline Marston, Mary A. Terry, Nancy Henderson and Ruth Noble each became vested with an undivided one-sixth interest in the proceeds of the sale of said real estate, but with their respective rights of enjoyment postponed until after the termination of the life estate of Mary Cadwalader; that Adaline Marston having died leaving no children, the one-sixth interest vested in her vested in her surviving husband, Joseph G. Marston; that Nancy Henderson having died, the one-sixth interest invested in her, descended to Frank Henderson, her surviving husband, and her child Addie Henderson, and Addie Henderson having died in infancy, the part that descended to her from her mother became vested in Frank Henderson, and at his death the sixth originally vested in Nancy Henderson descended to Ida Henderson, the surviving widow of Frank Henderson, and Hazel Ross, his child; that Eli B. Cadwalader became vested with an interest to the extent of $200 in the remaining one-sixth of said proceeds of sale, his enjoyment thereof being postponed until after the death of Mary Cadwalader; that the $200 vested in Eli B. Cadwalader, the possession of which was postponed until after the death of Mary Cadwalader by the death of Eli B. Cadwalader, descended to his surviving widow and children, one-third to his surviving widow, Maggie Cadwalader, who was his third wife and the mother of his four youngest children, and she having died while a widow, her interest descended to her children and should be

paid to them share and share alike; that the legacies of the $100 each to be paid to Calvin Cadwalader, to Elmer E. Cadwalader and Eva L. Cadwalader were vested interests subject to the life interests of Mary Cadwalader and Eli B. Cadwalader and should be paid to them, and that the remainder of the sixth, the use of which was bequeathed to Eli for his life, should be distributed to Jesse K. Cadwalader, Mary A. Terry, Ruth Noble and Joseph G. Marston, one-fifth each, and to Ida Henderson and Hazel Ross together, one-fifth, one-third thereof to Ida Henderson and two-thirds to Hazel Ross.

Jesse K. Cadwalader, individually and as executor, and Ruth Noble and Mary A. Terry have sued out a writ of error to review that decree.

The will of the testator gives to his wife the farm "to have and to hold the same during her natural life" and directs his executors at her death, "to sell at public or private sale, as they may deem most advantageous, the said real estate above described,—and divide the proceeds as follows:—To my daughter, Ruth Noble, one-sixth" with similar provisions in behalf of Nancy Henderson and Adaline Marston, each of whom died before the life tenant. If under the will the sixth interests given to Nancy Henderson and Adaline Marston vested at the death of the testator, then plaintiffs in error have no interest in such bequests, while if they did not vest until the death of the life tenant and the sale, that is, that their right to enjoy the legacies is contingent upon their survival beyond the time of conversion, as the will contains no provisions concerning these bequests in the event of the death of the donees, they became intestate estate. The will does not devise the real estate to the executors in trust but only gave them a power of sale. Where executors are given power to sell and convey real estate, they take a fee by implication for "the purpose of the trust." (Mc-

*Cartney v. Osburn,* 118 Ill. 403.) Neither does the will in terms give the remainder in the land after the death of the life tenant to the children of the testator until after it has been converted. It only gives to the legatees each a one-sixth interest in the proceeds.

The contention of plaintiffs in error is that the bequests to Mrs. Henderson and Mrs. Marston are contingent upon them surviving the conversion of the real estate by the executors. "A contingent remainder is one limited to take effect either to an uncertain person or upon an uncertain event. It is limited by the instrument creating it either to a person not yet ascertained or not in being, or so as to depend upon an event which may never happen. * * * Whenever the person who is to succeed to the estate in remainder is in being and is ascertained, and the event which by express limitation will terminate the precedent estate is certain to happen, the remainder is vested. The uncertainty which distinguishes the contingent from the vested remainder is not the uncertainty whether the remainderman will live to enjoy the estate, but whether he will ever have the right to such enjoyment." *Carter v. Carter,* 234 Ill. 507; *Lachenmyer v. Gehlbach,* 266 Ill. 11; *Harvard College v. Balch,* 171 Ill. 275.

It is argued on behalf of defendants in error that where by the terms of a will there is a direction that real property be sold and the proceeds divided there is in such cases an equitable conversion of the real property into money, and that such conversion is regarded as having taken place at the death of the testator.

In the construction of wills it is the duty of courts to ascertain the intention of the testator as expressed in the instrument, and to so construe the will as to give effect to that intention, if it can be done without violating any established rule of law or public policy. "It is also well settled that the law favors the vesting of estates, and will construe the terms of a will as cre-

ating a vested estate if possible." (*Ducker v. Burnham,* 146 Ill. 9; *Scofield v. Olcott,* 120 Ill. 362.) "It must be presumed that the testatrix intended by her will to dispose of her entire interest in the property, and not to die intestate as to any part of it. So strong is this presumption, that it has sometimes been said, with some extravagance, perhaps, that it will justify almost any construction of a will which will defeat intestacy as to a part of the estate. (2 Redfield on Wills, 235; *Higgins v. Dwen,* 100 Ill. 554; *Hayward v. Loper,* 147 id. 41.) Again, the law favors the vesting of estates rather than that the title shall be in abeyance, and it was said in *Scofield v. Olcott,* 120 Ill. 362 (on p. 374) : 'It has long been a settled rule of construction in the courts of England and America, that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent on a future event.' " (*Hawkins v. Bohling,* 168 Ill. 214.) "It is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment which makes the difference between a vested and contingent interest." (*Temple v. Scott,* 143 Ill. 290; *Hawkins v. Bohling, supra.*) Another rule applied in the construction of wills is what is known as the doctrine of equitable conversion. Equitable conversion is defined as "a constructive alteration in the nature of property by which in equity real estate is regarded as personalty or personal estate as realty. It grows out of the old equitable maxim that 'Equity regards that as done which ought to be done.' It has been adopted for the purpose of executing trusts, and it is essential to the application of the doctrine that the property should be subject to a trust or imperative direction for conversion and such conversion is regarded as having taken place at the death of the testator." *Greenwood v. Greenwood,* 178 Ill. 387; *Glover v. Condell,* 163 Ill. 566;

*Carper v. Crowl,* 149 Ill. 465; *Darst v. Swearingen,* 224 Ill. 229; *Ebey v. Adams,* 135 Ill. 80; *English v. Cooper,* 183 Ill. 203; *Starr v. Willoughby,* 218 Ill. 485.

In *Hawkins v. Bohling,* 168 Ill. 214, there was a devise of real estate and other property to a trustee to apply the rents and profits to the support of the husband of the testatrix with the right to sell the real estate and put the proceeds at interest, and at the death of the husband to sell the real estate remaining unsold and divide the proceeds between two named legatees. It was contended that the interest of the legatees was not vested but contingent. Mr. Justice Carter in the opinion states: "To this point it is sufficient to reply, that it appears by the will that the payment or distribution was postponed for the convenience of the estate,—that is, to let in the prior interest given to the husband,—and was not postponed for reasons personal to the legatee, and that in such cases the interest will vest on the death of the testator. Had it been postponed until Mrs. Craig should have arrived at a certain age, or until the happening of some event personal to herself which might never happen, a different construction might be required." Citing *Scofield v. Olcott,* 120 Ill. 362. The same rule was held in *Knight v. Pottgieser,* 176 Ill. 368.

In *Beaver v. Ross,* 140 Iowa 154, 20 L. R. A. (N. S.) 65, a bequest, identical with those to defendants in error, was held to be vested so that the bequest could be assigned in the lifetime of the life tenant, and such assignment was held valid against a garnishment of the executor after the conversion. In the note to *Beaver v. Ross* are cited *Fairly v. Kline,* 3 N. J. L. 755; *Miller's Ex'r v. Sageser,* 30 Ky. L. Rep. 837; *Cropley v. Cooper,* 19 Wall. (U. S.) 174; *Wintermute v. Snyder,* 3 N. J. Eq. 493; *Bunce v. Vander Grift,* 8 Paige (N. Y.) 37; *Fisher v. Banta,* 66 N. Y. 468; *Smith v. McCrary,* 38 N. C. 204; *Collier v. Grimesey,* 36 Ohio St. 17; *In re Parkinson's Appeal,* 32 Pa. St. 455; *Green*

*v. Davidson,* 4 Baxt. (Tenn.) 488, and *Nelson v. Nelson,* 36 Ind. App. 331, 75 N. E. 679; with other citations that hold that legacies similar to those to Mrs. Henderson and Mrs. Marston, on the death of the legatee in the lifetime of the life tenant, vest in the personal representatives of the deceased legatees. See also, *Redman v. Hubbard,* 140 Ky. 71, 37 L. R. A. (N. S.) 728, and note.

The will of the testator having directed that the real estate sold after the death of the wife of the testator and one-sixth of the proceeds paid to Adaline Marston and one-sixth to Nancy Henderson, the said legacies became vested in said legatees at the death of the testator, and Adaline Marston and Nancy Henderson having died before the life tenant, the trial court correctly decreed that said interests be paid to the personal representatives of said deceased legatees.

The legacy of $200 to be paid to Eli B. Cadwalader from the sixth, the remainder of which was to be loaned out and the interest paid to him during his lifetime, was a legacy vested in Eli B. Cadwalader, and he having died before the time of payment arrived, should be paid to his personal representative. *Carper v. Crowl,* 149 Ill. 465, and authorities therein cited; *Lachenmyer v. Gehlbach,* 266 Ill. 11. The court properly decreed how this legacy should be distributed in the event of it not being required for the payment of debts of the legatee.

The remainder of the sixth, that was to be invested and the income paid to Eli during his life, is directed to be distributed at his death $100 to each of three named children and the remainder between the sisters and brother of said Eli, "and if any of the sisters or brothers of the said Eli B. Cadwalader shall die before the said Eli B. Cadwalader, the portion that the deceased sister or brother would have received if living shall be paid to the heirs of such deceased sister or brother." The clause simply created a second life es-

tate between the death of the testator and the time of distribution. The principal involved is the same as where a single life estate intervenes. *Cropley v. Cooper*, 19 Wall. (U. S.) 167. Under the terms of the will and the authorities cited, the interest of the brothers and sisters of Eli, in the remainder of the sixth of which he had the life use, vested in the brothers and sisters, and on the death of any of them the share vested in each brother or sister vested in their representatives. There is no error in the decree and it is affirmed.

*Affirmed.*