WILLIAM B. BRISTOL, EXECUTOR, *vs.* WILLIS R. AUSTIN, ADMINISTRATOR.

A testator made the following bequest to his widow: "I give all my estate, real and personal, to my beloved wife L, for her life, to be used in the support of herself and my children, but subject to the provisions hereinafter stated." In subsequent clauses he gave her power "to sell and convey any part of the estate, real or personal, absolutely and in fee simple, in the same manner as if she had the entire interest therein, instead of a life interest;" and authorized her at her discretion to make advancements to the children to enable them to · go into business or as marriage portions, not exceeding their respective shares of the estate, and by will, if she should deem it expedient, to limit to any of them a life estate in the property, or to create a trust with such restrictions as she should think proper. Held that the widow took a beneficial interest for her life in the entire property, charged with the family support, and not a trust estate in the unexpended surplus of the income for the children.

If the first clause was to be alone considered in determining the testator's intention, the weight of authority, especially in this country, would lead to the opposite result.

But the other provisions of the will, giving the widow so large a discretion with regard to the property, thus evincing the testator's confidence in her, the absence of all indication that he intended her to keep an account of receipts and expenditures, and the characterization by him of her interest as a life interest in opposition to an entire interest, show that a trust estate could not have been intended.

The testator presumably had an affectionate solicitude for both his wife and his children, and such an interest would more naturally find expression in a ben-

eficial interest given her, charged with the support of the family, than in the creation of a trust between mother and children, involving as it would opposing interests, and difficult and delicate fiduciary duties and obligations.

In a doubtful case a court may properly presume strongly in favor of such an intention, on the part of a testator so situated, as would insure harmony.

The tenor of modern decisions is unfavorable to the conversion of a devisee or legatee into a trustee by reason of precatory or commendatory words, and it is well settled that such expressions must be essentially imperative in their character to create a trust.

The widow during her lifetime sold a portion of the real estate and invested the proceeds in personal securities. Held that, in the absence of any directions as to the investment of the proceeds of sales, while giving full power to sell, the testator must be taken to have intended to leave it to her discretion to convert the estate from real to personal and vice versâ at her discretion; and that therefore the securities should be distributed as personal property.

And if the proceeds of the sale of the lands had been invested in other lands the character of the former as ancestral estate would not pass to the latter.

BILL IN EQUITY, brought to the Superior Court in New Haven County, by the executor of the will of Enos B. M. Hughes, asking for advice as to the construction of the will. Facts agreed and the case reserved for the advice of this court. The facts are sufficiently stated in the opinion.

*J. S. Beach*, with whom was *L. H. Bristol*, for the petitioner, and for all the respondents except Willis R. Austin, contended,

1. That Mrs. Hughes under the will took the whole income of the estate during her life, without any obligation to account for the same as trustee ;—citing *Thorp* v. *Owen*, 2 Hare, 607 ; *Brown* v. *Casamajor*, 4 Vesey, 498 ; *Hammond* v. *Neame*, 1 Swanst., 35 ; *Gilbert* v. *Chapin*, 19 Conn., 346 ; *Harper* v. *Phelps*, 21 id., 257 ; *Rhett* v. *Mason's Exr.*, 18 Gratt., 541 ; *Smith* v. *Jewett*, 40 N. Hamp., 530.

2. That the proceeds of the real estate sold by Mrs. Hughes and invested in personal securities must be treated as realty upon the final distribution of Mr. Hughes's estate ;— citing Leigh & Dalzell on Equitable Conversion, 15 ; *Seeley* v. *Iago*, 1 P. Wms., 389 ; *Witter* v. *Witter*, 3 id., 99 ; id., 22, note ; *Earl of Winchelsea* v. *Norcliffe*, 1 Vern., 435 ; *Sergeson* v. *Sealey*, 2 Atk., 413 ; *Earlom* v. *Saunders*, Amb., 241 ; *Roper* v. *Radcliffe*, 10 Mod., 230 ; *Thornton* v. *Hawley*, 10 Ves., 138 ; *Biddulph* v. *Biddulph*, 12 id., 160 ; *Gibson* v.

*Scudamore*, 1 Dickens, 45; *Hill* v. *Cock*, 1 Ves. & B., 173; *Edwards* v. *Tuck*, 23 Beav., 268; *Griffith* v. *Ricketts*, 7 Hare, 308; *In re Ibbitson's estate*, Law Reps. 7 Eq. Cas., 226; *Canfield* v. *Bostwick*, 21 Conn., 553; *Gold* v. *Judson*, id., 625; *Grider* v. *M'Clay*, 11 Serg. & R., 224; *In re Tilghman's estate*, 5 Whart., 44, 65; *Lloyd* v. *Hart*, 2 Penn. S. R., 473; *Dyer* v. *Cornell*, 4 id., 359; *Pennell's appeal*, 20 id., 515; *Commonwealth* v. *Martin's Exrs.*, 5 Mumf., 117; *Hawley* v. *James*, 5 Paige, 444; *Craig* v. *Leslie*, 3 Wheat., 577.

*G. Pratt*, for the respondent Willis R. Austin, contended

1. That Mrs. Hughes took no beneficial interest in the income of the estate beyond her support, and that she held the rest of the income as trustee, to apply the same for the support of the children, and to account to them for the unexpended surplus;—citing Perry on Trusts, 13; Hill on Trustees, 65; 1 Jarman on Wills, 503; *Malim* v. *Keighley*, 2 Ves. Jr., 333; *Davidson* v. *Foley*, 2 Brown Ch., 203; *Robinson* v. *Taylor*, id., 589; *Roper* v. *Radcliffe*, 9 Mod., 187; *King* v. *Denison*, 1 Ves. & B., 260; *Raikes* v. *Ward*, 1 Hare, 445; *Crocket* v. *Crocket*, id., 451; *Jubber* v. *Jubber*, 9 Sim., 503; *Wetherell* v. *Wilson*, 1 Keen, 80; *Woods* v. *Woods*, 1 Mees. & Crompt., 401; *Bull* v. *Bull*, 8 Conn., 47; *Strong* v. *Strong*, id., 408; *Mason* v. *Mason's Exrs.*, 2 Sandf. Ch., 432; *Cole* v. *Littlefield*, 35 Maine, 443; *Farwell* v. *Jacobs*, 4 Mass., 634; *Chase* v. *Chase*, 2 Allen, 101; *Warner* v. *Bates*, 98 Mass., 274; *Loring* v. *Loring*, 100 id., 340; *McKonkey's Appeal*, 3 Penn. S. R., 253.

2. That the proceeds of the sale of the real estate were to be distributed as personal estate;—citing 1 Roper on Legacies, 356; 1 Jarman on Wills, 530, 536; 3 Redfield on Wills, 140; *Brown* v. *Bigg*, 7 Ves., 280; *Terry's Appeal from Probate*, 28 Conn., 339.

PHELPS. J. The advice of the Superior Court by way of amicable suit is now for the second time asked with regard to the construction of the will of Enos B. M. Hughes, deceased, and that court at the request of the parties has reserved the questions made for our determination.

The following is the material disposing clause in the will to which our attention is directed : " After the payment of my just debts, funeral charges, and the expenses of settling my estate, I give, devise and bequeath all the estate, both real and personal, whether in possession, reversion or remainder, which I now have or which I may have at the time of my decease, to my beloved wife, Louisa W. B. Hughes, for her life, to be used in the support of herself and my children, but subject to the provisions hereinafter mentioned."

The testator in subsequent clauses authorizes his widow to make advancements to the children to enable them to engage in business or for marriage portions, as she might from time to time deem expedient, not exceeding their respective shares in his estate under the provisions of his will ; and gives her power, subject to the written approval of certain persons designated, to sell and convey any part of his estate, whether real or personal, absolutely and in fee simple, in the same manner as if she had the entire interest therein, instead of a life interest ; and also gives her power by will, if she shall deem it expedient by reason of the situation or character of either of his children, to limit to any or either of them a life estate only in his or her share, or to permit any or either of them to receive only the annual income of such share for his or her life, or to create an estate in trust in such share or shares for any or either of such children and their issue, with such conditions and restrictions as she may deem proper ; provided the exercise of this power shall only operate to limit the enjoyment by them of their proper shares according to the foregoing provision.

The testator executed his will in 1841, and died in 1864, leaving a widow, the said Louisa W. B. Hughes, four children, and one grandchild, Louisa Hughes Austin, the daughter and only child of a daughter Louisa who had deceased prior to the testator. Mrs. Hughes died in 1872, having sold some of the real estate under the power given her in the will, and invested the proceeds in personal securities, and during the interval between the decease of her husband and herself she had collected and received the income from the entire estate. We are asked to advise—

1. What interest in her husband's estate did Mrs. Hughes take under the provisions of the will? and

2. Are the proceeds of the real estate sold by her and invested in personal securities to be treated in the final dis·tribution as real or personal estate?

In the investigation of this case with a view to a correct determination of the first question raised, we have carefully examined all the cases cited on the briefs of counsel, together with many others reported from both the English and American courts, but are satisfied that the construction must be governed, and the intention of the testator found, from the language of the instrument, rather than from any general rule of the text writers, or the authority of any of the adjudged cases. The phraseology of the disposing clause differs from that used in any case we have been able to discover, and if we were at liberty to extract the intention of the testator from that clause alone, unaffected by the subsequent provisions, we are satisfied that the preponderance of authority, especially in this country, would lead us to the opposite result from that to which we have come. The testator's estate of every description is devised and bequeathed for life, with the strongly qualifying expression, " to be used in the support of herself and my children," subject to the power of advancement, sale, and limitation of enjoyment. These qualifying words seem to designate the sole purpose for which the estate was given, and to establish the conclusion that if the whole was not exhausted in satisfying that purpose the remainder would be held in trust for the benefit of the children.

The current of English authority however is not uniform or perhaps very decisive, and it is interesting to notice the difficulties experienced in attempting to reconcile the conflict in its decisions, by the astute and able judges who have presided in the High Court of Chancery. A brief review would be presented of the most important of the causes determined by that court if our decision was to be made to turn on the mere disposing words of the clause of the will to which we have particularly referred, but for the purpose of elucidating the principle of interpretation which we have

adopted it is unnecessary. As however some of those cases were strongly pressed upon us as establishing a governing principle in the case before us, we call attention to the following, and others therein cited and referred to. *Raikes* v. *Ward*, 1 Hare, 445; *Thorp* v. *Owen*, 2 id., 607; *Crockett* v. *Crockett*, 2 Phillips, 553; *Woods* v. *Woods*, 1 Mylne & Craig, 401; *Longmere* v. *Elcam*, 2 Younge & Collyer, 363; *Wetherell* v. *Wilson*, 1 Keen, 80; *Malim* v. *Keighly*, 2 Vesey, 333; *Brown* v. *Casamajor*, 4 id., 498; *King* v. *Denison*, 2 Vesey & Beames, 263; *Benson* v. *Whittam*, 5 Simons, 22; *Hadow* v. *Hadow*, 9 id., 438; *Jubber* v. *Jubber*, id., 503; *Gilbert* v. *Bennett*, 10 id., 371; *Webb* v. *Woods*, 2 Simons N. S., 267; *Davidson* v. *Foley*, 2 Brown Ch., 202; *Robinson* v. *Taylor*, id., 589; *Hammond* v. *Neame*, 1 Swanston, 35; *Rogers* v. *Rogers*, 3 P. Wms., 193; *In re Harris*, 7 Exchequer, 344.

We think the American cases, and especially those from our own court, are however quite decisive in favor of the claim that the language of the testator, if restricted to the disposing words above recited, would clearly create a trust in the widow, of the unexpended estate. *Bull* v. *Bull*, 8 Conn. R., 47; *Strong* v. *Strong*, id., 409; *Gilbert* v. *Chapin*, 19 id., 342; *Chase* v. *Chase*, 2 Allen, 102; *Loring* v. *Loring*, 100 Mass., 340; *King* v. *Mitchell*, 8 Peters, 349.

In favor of a contrary doctrine, *Harper* v. *Phelps*, 21 Conn. R., 258; *Smith* v. *Jewett*, 40 N. Hampshire, 533; and *Rhett* v. *Mason*, 18 Grattan, 541, were strongly relied on, and *Rich* v. *Rogers*, 14 Gray, 174, points in the same direction.

The importance of the general question as to what words in a will create a trust, as distinguished from those which convey a beneficial interest, may excuse a few additional observations, though unnecessary to our present determination. The particular question whether a trust is created or a beneficial interest given by the force of the precise form of words used, is fully and intelligently discussed by Mr. Hill, commencing on page 65 of his treatise on Trustees. The learned author there says, " When a gift in a will is expressed to be for the benefit of others, or at the disposal of

the donee for herself and children, or towards her support and that of her family, or to enable the donee to provide for or maintain his children, or to the end or intent that he should apply it to certain purposes, the terms employed have been sufficient to fasten a trust on the conscience of the donee; but if they confer a mere power or authority, and leave it entirely at the discretion of the donee to apply or not to apply the gift to the designated purpose, no trust will be created."

If in this case the testator had simply given Mrs. Hughes the estate for life, to be used in the support of herself and his children, with no power of advancement, or sale, or limitation of enjoyment, and nothing in the context of the will affecting its construction, we should find no serious difficulty in adopting the interpretation claimed in behalf of the children. This language, unaffected by any words in other clauses of the will indicating a purpose of enlargement, would seem to be decisive of an intention to confine the specific provision to the object named and exclude its application to any other.

The language of Lord ELDON in a leading case on this subject, *King* v. *Denison*, 1 Vesey & Beames, 263, which has been approvingly cited by modern text writers, is consistent with this view. The devisee was there held to take a beneficial interest, but the decision was expressly placed on the ground that the estate devised was subject to, and charged with, the particular purpose expressed, and not given for that purpose. The language of the devise was technically apt and distinct in the use of those expressions and their legal signification seemed undoubted.

But we are to gather the intention of the testator from the entire instrument, and the context seems very important in its relation to the disposing clause. It will be noticed that the devise to the widow is made expressly subject to the subsequent provisions of the will, and the general tenor of those provisions is more consistent with an intention in the testator to give a beneficial interest, than to create a trust with accountability to the children after her second marriage or

decease for such portion of the unexhausted estate as should happen to remain. A construction in favor of an intended trust must necessarily assume an expectation by the testator that the widow would keep an account of all the income from the estate, and all the expenses incurred in the support of herself and children, and involve an inquiry into their condition and respective wants to determine whether the trust had in that respect been faithfully discharged, and, if a considerable part from time to time remained, whether that had been prudently invested for the benefit of the beneficiaries in accordance with the obligations imposed by law on such trustees. In the absence of anything in the will in favor of such an intention except the clause indicating the purpose for which the devise was given, we do not feel at liberty to presume it. The inherent probabilities of the case, and the ordinary rules which govern human action under such circumstances, forbid it. A power to sell and to convey an absolute estate in fee simple, and an authority to make advancements to the children for marriage portions, and to establish them in business, and, in her discretion according to her judgment of their situation and character, to essentially limit by her own will their enjoyment of their interest, are certainly extraordinary provisions, and confer such unusual powers upon a mere trustee of a life estate as are uncommon in the observation and experience of the profession, and require confirmation from something more than what have been fitly termed the " dubious fiduciary expressions" by virtue of which trusts have sometimes been held to be raised. While the testator's confidence in Mrs. Hughes is strikingly attested by the foregoing provisions, it is to be presumed he had an affectionate solicitude for both herself and his children, and such interest in them all is much more naturally indicated by an interpretation in favor of a beneficial estate for life in the widow, charged with the support of the family, than by a trust between mother and children, encumbered with difficult and delicate fiduciary duties and obligations, and liable to the disagreements during the existence of the trust and the litigation afterward which might

become, and in fact are at least in part, among the first fruits borne of a claim to the oppposite construction.  Indeed, in a doubtful case, we think we should strongly presume in favor of such an intention by a testator so situated as would insure harmony, rather than incur the risk of the possibility of discord, among those who were entitled to an equal claim to his regard and bounty.  In connection with this suggestion it will be remembered that the only provision made for the widow is the use of the testator's property for her life, and this so far as should be necessary was to be expended in the support of the children, while the entire and absolute fee is primarily given to them, but in a later clause subjected to a power of limitation in its enjoyment, which in fact was never exercised.  The record is silent as to the amount of the estate and of the income from it, and as to whether it was all expended in the family support, but in any event, if Mrs. Hughes took only as a trustee, and her estate is liable to account to the children for the unexpended balance, if any, of the income during the period of eight years which she survived the testator, the interest which the children receive will be greatly in excess of, and disproportioned to, that received by Mrs. Hughes ; a result which it is not reasonable to suppose was contemplated and designed by the testator.

There is an expression in the clause conferring power upon the widow to sell to which our attention was not specially called in the argument, but which in our judgment furnishes strong corroboration of the claim that the testator intended to convey to Mrs. Hughes a beneficial estate for life, and that the provision requiring the support of the family from it was merely intended as a charge upon it, and which brings the case more clearly within the reasoning of Lord ELDON in *King* v. *Denison*, that where it appears from the words of the instrument that the property is given subject to the particular purpose expressed, and not for the discharge of that purpose only, the donee will take beneficially what remains after the satisfaction of that purpose.  The words of the clause are, " My said wife shall have the power and authority to sell and convey any part of my said estate, whether

real or personal, absolutely and in fee simple, in the same manner as if she had the *entire interest therein, instead of a life interest.*" We cannot reasonably presume that this language would have been used by an intelligent testator or draftsman who supposed that in the next preceding sentence a trust only had been created and no beneficial estate conveyed. The word "interest" is obviously used in a personal and not in a fiduciary sense, and the words "entire interest" so contrasted with the other words "life interest," with reference to an absolute conveyance in fee simple, as, in connection with the other circumstances of the case, to fix the impression of the testator's understanding and intention beyond any serious doubt.

Several of the cases cited and commented on by counsel related only or principally to the effect of precatory and commendatory expressions by a testator, in their application to the question whether, by the mere operation of those expressions, a trust was legally created. We have considered that class of cases entitled to very little weight in the determination of this, and will dismiss that branch of the general subject of trusts by a brief allusion to the prevailing principles which govern them. In some of the earlier English cases expressions of hope, confidence, request, desire, recommendation, and the like, were held to raise a trust, where not only the property devised but the persons who were to take were left in uncertainty and doubt. But more recently a strong disposition has been manifested not to extend the doctrine of raising a trust upon such words, but to give them only their natural and ordinary effect, unless it is clear that they were intended to be used in an imperative sense and not as indicative of discretion in the devisee. The tenor of modern decisions has been unfavorable to the conversion of the devisee or legatee into a trustee, and the principle may now be considered as well established, that to constitute a trust from such and similar expressions the language must in its ordinary sense clearly import such an intention, and both the estate and the person or class of persons must be designated with reasonable certainty. 1

Jarman on Wills, 374; 2 Redfield on Wills, 423; Hill on Trustees, 71; *Gilbert* v. *Chapin,* 19 Conn. R., 346; *Harper* v. *Phelps,* 21 id., 267.

2. The remaining inquiry is, whether the proceeds of the real estate sold by Mrs. Hughes and invested in personal securities shall be treated as realty in the final distribution of Mrs. Hughes's estate.

This question derives its importance from the fact that Louisa Hughes Austin, the grandchild of the testator, who died intestate, was by a recent decision of this court held to take a vested interest in his estate. She died during minority, leaving no surviving child, brother or sister, and if the character of ancestral real estate is legally impressed on the personalty which was derived from the land sold by Mrs. Hughes under the power conferred upon her by the testator in his will, the surviving children of the testator will take by distribution so much of the avails of the land sold as represents the interest in the realty which vested in Miss Austin.

In the consideration of this question we look first to the provisions of the will, to see if we can discover any intention coupled with the authority to sell that will aid us in arriving at the proper construction. The power of sale during widowhood is entirely uncontrolled except by the proviso that it shall be exercised with the approval of the persons named, and the authority to sell without restriction ordinarily confers by implication the power to effect a conversion. We think this proviso was not designed to operate as a restriction on the discretion of Mrs. Hughes under the power, but simply to insure a judicious disposition of such portions of the land as it should be deemed advisable to sell; and we see nothing in the clause constituting the power, or in the context to the instrument, that gives color to the claim that there was any design by the testator to require her to so invest the proceeds of the property sold as to preserve its original character. Having authorized the sale without instruction with regard to the re-investment of the proceeds, the testator in the absence of other controlling circumstances must be taken to have intended to leave it to the

discretion of his wife to make a legal conversion of the estate from real to personal or *vice versâ*, or to replace the avails in estate of the same character, as she should elect. 3 Redfield on Wills, 140 ; 1 Jarman on Wills, 530 ; 1 Roper on Legacies, 356.

If the question had no relation to ancestral estate, and was merely that arising out of the direction by a testator for the conversion of land devised into money, or money bequeathed into land, we should feel the binding force of the established principle that equity regards that as done which is directed to be performed and will decree a title in conformity with such direction ; but here is at most a discretionary power to sell, a mere authority conferred for the benefit of the devisees, and with the expectation that they will be profited by the judicious exercise of that authority, and we think with the intention that they should take the property by distribution in the condition in which it should be placed by the change so authorized. Nothing in the will of the testator, or in any of the circumstances surrounding himself or his family or property, furnishes a reasonable motive for a contrary intention, and we do not consider the case as belonging to that class which is to be governed by the general principle of equitable conversion applicable to testamentary directions for the sale and change of property from one legal status to another.

But independently of these general considerations, if the avails of the land sold had been invested in other land, it would still want the character of ancestral real estate, and be excluded from distribution as such. That precise question was before this court in *Terry's Appeal from Probate*, 28 Conn. R., 339, and it was held, in construing the provision of the statute under which the manner of the distribution of ancestral real estate must be determined, that to clothe the estate with that character and entitle it to distribution as such it must be the identical estate that so came to the intestate, and not other real estate purchased with its avails or otherwise derived from or substituted for it. This property therefore is not impressed with the character of ancestral or other real

estate, and in our opinion the law works no such equitable conversion of it as to require its distribution otherwise than as personal property.

We advise the Superior Court to decree that Mrs. Hughes took a beneficial interest for life in the estate bequeathed and devised to her, charged with the support of herself and the children of the testator; and that the personal securities derived from the sale by her of the land left by the testator be distributed as personal estate.

In this opinion the other judges concurred.