MINNIE B. GARDNER ET ALS. APPEAL FROM PROBATE.

Third Judicial District, New Haven, June Term, 1908.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

As a general rule property is transmitted by descent and distribution in the form in which it exists at the death of the owner.

A testator who left real and personal property created a trust therein for the benefit of his three sons, which called for expenditures by the trustee from the corpus of the estate for the care, support

and education of his sons during their minority, and for a gradual
distribution or division among them of the remaining principal,
at the discretion of the trustee, during a period of several years
thereafter. The trustee also had "full power and authority" to
sell and convey any part or portion of the estate that might be
necessary to execute the trust, and was directed to make his
investments in the safest and most careful manner. *Held:*—

1. That it was apparent from the terms of the will that the testator
intended not only to confer a discretionary power on the trustee
to make a legal conversion of the estate from real to personal,
and vice versa, but that he also expected and intended that his
beneficiaries should take the property in its changed form; and
therefore a sale of the realty by the trustee pursuant to the au-
thority conferred, and a payment over of the proceeds to the sur-
viving son, carried nothing to the intestate estate of the latter,
which, at his death, could legally be regarded as "ancestral es-
tate" and distributable as such under General Statutes, § 398.

2. That in the absence of any evidence to show that the sales were
unnecessary, the regularity and propriety of the trustee's conduct
would be presumed; especially since the surviving son, who was
the sole remainderman and of full age, not only made no objec-
tion to the sales but from time to time to the date of his death
received the fruits thereof, and thereby precluded those who
could claim only through his intestate estate from raising ob-
jections which he himself never made.

3. That the sale last made, following an order of the Court of Probate,
was nevertheless as distinctly an exercise of the power contained
in the will as were the earlier sales which were not accompanied
by any such order; the purpose and object of the application to
the court being merely to secure an adjudication of the existence
of the necessity upon which the will conditioned the right to sell,
and not to obtain independent judicial authority.

Argued June 9th—decided August 3d, 1908.

APPEAL from a decree of the Court of Probate for the
district of Wallingford determining the heirs at law of
Frank C. Shipman, deceased, and ordering the distribution
of his intestate estate, taken to and tried by the Superior
Court in New Haven County, *Gager, J.;* facts found and
judgment rendered affirming the probate decree, and ap-
peal by the original appellants. *No error.*

Henry A. Shipman died in Ansonia, September 29th,
1884, leaving a will, which was duly probated, a widow,
and three sons, his only children and heirs at law. By the

will all of his property was given to three trustees, who were also named as executors. This property consisted of two pieces of real estate and an undivided one-half interest in a third piece, which were together inventoried at .$13,000, and personal property which, after the payment of debts and charges, was valued at $22,839.18. The two first-named pieces of real estate were, in the first paragraph of the will, set apart for the benefit of a son, Henry D., and the same, together with certain shares of stock, were, subject to the trust created, given to him. The second paragraph of the will gave the wife, subject to the trust, the use, rents and profits of the undivided half of the remaining piece of real estate, which was located in Meriden, and also the use, rents and profits of one-fourth part of the balance of his property, for and during her natural life. The will then proceeds as follows :—

" III. All the rest, residue, and remainder of my property of every description, I give, devise and bequeath, subject to the trust herein created, in equal shares, share and share alike, unto my three children, Henry D. Shipman, Frank C. Shipman, and John T. [I.] Shipman, upon the condition, however, that if at any time there shall be a failure of lineal heirs of either of said children, the heirs of the half blood shall take of the property herein devised and bequeathed equally with the heirs of the whole blood.

" IV. I direct my trustees herein named, or such others as may be appointed in their places, to take such care of my estate as prudent men would take of their own, and during the minority of my children that they expend for each minor child out of the portion of my estate belonging to such child by virtue of the provisions hereof such sums as shall be requisite for the care, support and education of such child ; and upon each of said children becoming of full age, provided such child shall be of temperate, industrious, and economical habits, and in the opinion of my trustees aforesaid be capable of transacting such business as he may thereafter engage in, shall pay over to such child or transfer to him such part of his portion of my es-

tate, not exceeding one-third of his share thereof, as may be deemed advisable by said trustees to establish said child in business ; and in case such child shall evince good business management said trustees shall at his request from time to time pay and transfer to such child the balance of his share of my estate, at the rate of not exceeding one-sixth part thereof in any one year ; but none of my estate while in the hands of trustees shall be taken to satisfy any liability of any of said children, except upon the written order of said trustees, given prior to the existence of such liability.

" V. If after becoming of age any of my said sons by reason of irregular or improvident habits, or lack of thrift, or otherwise, shall in the opinion of my trustees be an unsuitable person to have the custody and management of his portion of my estate, said trustee shall only permit him to use such part of his portion of my estate as shall be necessary for the current wants of such son and his family, in case he have a family."

VI. Provides for the selection of trustees in cases of vacancy.

" VII. This trust shall continue during the life of my said wife, and until my entire estate shall have been paid over or transferred to my children or to their legal representatives, or used for their benefit, and if either of said children shall die leaving any part of his portion of my estate in the hands of said trustees, and without leaving any lineal heirs, such part of his portion of my estate as shall be inherited by my other said children, or either of them, shall remain in the hands of said trustees in the same manner as the portions of the children inheriting such deceased child's portion, and neither of my said sons shall have any power to dispose of any part of my estate while in the hands of trustees, or in any manner pledge or affect the same by contract, will, or otherwise, while in the hands of said trustees.

" VIII. My said trustees and their successors shall at all times have full power and authority to sell and convey

any part or portion of my estate that shall be necessary to execute the provisions of this trust; but all investments of my estate by said trustees shall be made in the safest and most careful manner.

"IX. Upon the death of either of my sons aforesaid any part of such son's portion of my estate subject to the trust herein created, shall, except as hereinbefore provided, be discharged of such trust, and vest in such persons as are entitled to receive the same, free from all restrictions."

Charles H. Pine alone, of the three persons named as executors, qualified. He filed his final account July 28th, 1885. He, also alone, qualified as trustee and paid over to himself in his capacity as trustee the estate already specified. He continued to execute said trust until the same was terminated by the death of Frank C. Shipman, the intestate whose estate is now in settlement.

Mrs. Shipman, the widow, survived her husband less than one year. One of the sons, John I., died February 14th, 1893, intestate, unmarried, and without issue. The son Henry D. died September 13th, 1901, intestate, leaving a widow but no issue. October 17th, 1902, this widow conveyed all her right, title and interest in and to the estate of her husband to Frank C. Shipman. Frank C., the last survivor of the family, born July 29th, 1875, died between June and December, 1906, intestate.

During Pine's management of the trust the three pieces of real estate left by Henry A. Shipman were sold in the manner and for the cash proceeds stated in the opinion, and these proceeds were retained as a part of the corpus of the trust and reinvested. As a result of the judicious management of the fund it increased in value to the amount of $20,000 while in the trustee's hands. After Frank C. Shipman's death, Pine, as trustee, turned over to himself as administrator of Frank's estate cash and bank deposits amounting to $21,054.53, being the amount of the trust fund then remaining in his hands, and received from other sources as Frank's estate, property inventoried at $40,798.74. Said trustee, under the provisions of the will,

paid over to Frank for the year ending June 30th, 1902, $17,150, for that ending June 30th, 1903, $5,500, for that ending June 30th, 1904, $5,422.13, for that ending June 30th, 1905, $4,499.38, and for the year ending June 30th, 1906, $5,000, making in all $37,571.51. Frank, after arriving at full age and being *sui juris* and fully competent to manage his affairs, ratified and confirmed all of Pine's doings as trustee, including the sales of real estate made by him. All of said sales were such as a prudent man would make of his own property, and were made in fulfilment of the obligations laid upon him by the express terms of the will.

The last two sentences, taken from the finding, are excepted to·and made the subject of reasons of appeal.

*William C. Mueller* and *Edward A. Harriman*, for the original appellants (Minnie B. Gardner *et als.*).

*Frank S. Fay* and *George A. Clark*, for the appellees (Fanny Maria Colton Rust *et als.*).

PRENTICE, J. The property of the estate of Frank C. Shipman, deceased, awaiting distribution as intestate estate, consists of both real and personal estate. The order of distribution appealed from divides it all among the next of kin of the intestate. Certain other persons, the appellants, further removed from him in kinship, claim to be entitled to have portions of the property distributed to them by virtue of that part of § 398 of the General Statutes which provides for the descent and distribution of such real estate of an intestate as came to him by descent, gift, or devise from a kinsman. The appellants rest this claim upon (1) their kinship to Henry A. Shipman; (2) the ownership by Henry A. Shipman, at his death, of certain real estate; (3) the descent, by virtue of Henry A. Shipman's will, of such real estate, or that for which it stands, subject to created but now terminated trusts, directly from him to Frank C. Shipman, his son; and (4)

the presence in the estate of the latter awaiting distribution, of certain moneys or bank deposits which, as being or representing the proceeds of the sale of said real estate, should, it is contended, be regarded in law and equity as the very real estate left by the testator.

In making application of the statutory provisions thus invoked, we are required " to look to the immediate descent and immediate ancestor, rather than to a remote descent and a remote ancestor." *Clark* v. *Shailer*, 46 Conn. 119, 123. The parties are in contention as to whether this requirement of the law is satisfied as to the larger part of the funds in controversy, whatever character be given to them, so that Henry A. Shipman, through whom the appellants alone claim, and not the intestate's predeceased brothers, can be regarded as the immediate source from which the intestate received it. We have no occasion, as will later appear, to pass upon this matter. Some portion of the property did come to the intestate by the direct operation of his father's will, and a question underlying this whole case is thus presented.

The property to which the appellants lay claim is, and came to the intestate's estate as, personalty, being cash on hand or in bank. It amounts to $14,500. Of this sum $7,000 was, the appellants' contention assumes, the proceeds of sales by the trustee under the father's will of two pieces of real estate left by him and forming a part of the trust fund created by the will. The remaining $7,500 was, as is similarly assumed, the proceeds of the sale by the trustee of an undivided half of another piece of real estate also left by the testator and included in said fund. The first-named pieces were sold in 1886 and 1893, without action by the Court of Probate; the last named was sold in 1904, following an order of the court. As to all this money so received by the trustee from the sale of real estate and by him, upon the termination of the trust, turned over, as is said, to the estate of Frank C. Shipman, it is asserted that it should be treated as the real estate sold would be treated had no sale been made and that

identical property now appeared among the assets of the intestate's estate. The general rule is that property is transmitted according to the form in which it exists at the time of the death of the owner, but the principle now invoked is a recognized one as applicable to certain conditions. *Horton* v. *Upham*, 72 Conn. 29, 31, 43 Atl. 492; *Chapin, Petitioner*, 148 Mass. 588, 591, 20 N. E. 195; *Smith* v *Bayright*, 34 N. J. Eq. 424, 427. It remains to inquire if those conditions are present here.

The question which this contention first prompts is one as to whether, in view of the financial record of the fund, there is justification for the assumption which lies at the foundation of the argument presented, that the proceeds of these sales of real estate can with reasonable certainty be traced to the funds which were turned over by the trustee after the death of Frank C. Shipman. Let this fact, however, be assumed, and the argument advanced on behalf of the appellants must nevertheless fail.

The will provides that the trustees thereunder should have full power and authority to sell and convey any part or portion of the testator's estate that should be necessary to execute the provisions of the trust, but that all investments should be made in the safest and most careful manner. Here is no mere power to change investments. In *Bristol* v. *Austin*, 40 Conn. 438, where a life beneficiary was given the power to sell, it was held that the intent of the testator was to confer the discretionary power to make a legal conversion of the estate from real to personal and vice versa, so as to change its character for all purposes and so to all parties interested. Here we have a case where the like intent on the part of the testator is much more strongly manifested, and this intent must govern. This testator was providing an elaborate scheme of benefaction which would quite probably, if not certainly, require for the accomplishment of his plan the sale of portions, or all, of his real estate. He was providing for expenditures by the trustee from the corpus of his estate for the care, support and education of his children during

minority, and divisions thereof to each in repeated partial payments year by year for a period of years after majority. More than one third of his not large estate consisted of realty. He must, therefore, have anticipated that exigencies would, in the natural course of things, arise, when to meet the situation presented the conversion of real estate into money would be a necessity. It was doubtless the anticipation of this fact which led him to give the trustee the power of sale so essential to the execution of this trust. Other prudential considerations may have been present in his mind and other benefits sought, but the terms of the will point too unerringly to that which has been indicated as being the mainspring of his action and his chief end in view, for his motive and intention to be undiscovered. Once discovered, and the scheme of his giving being borne in mind, it is apparent that he not only contemplated the necessity of conversions as an incident of the execution of the trust, but also expected and intended that his estate should be shared by his beneficiaries in its changed form. In the situation which he created and in which he placed his trustee, it is impossible to believe that when he gave the power of sale he did not contemplate and intend that whatever new form his estate should take on by reason of the exercise of the authority given, it, and nothing else, should for the future represent in the fullest sense his estate, and express its real character in all its relations, for all purposes and as to all parties concerned. He could not have entertained the idea that his real estate, as such, was to be preserved or go to his beneficiaries. The situation as respects the proceeds of the sales in 1886 and 1893, which were made in the exercise of the power conferred by the will and by no other authority, is therefore one in which it would seem that the character of personalty must, for the purposes of the distribution of it as the estate of Frank C. Shipman, into which it has come, attach to it. *Bristol* v. *Austin*, 40 Conn. 438, 449 ; *Gray* v. *Whittemore*, 192 Mass. 367, 384, 78 N. E. 422.

But it is said that it does not appear that there was any

necessity for these sales, and therefore that it does not appear that the power was properly exercised. The contrary, however, does not appear, and the regularity of the trustee's conduct will, in the absence of countervailing proof, be presumed. *Beers* v. *Narramore*, 61 Conn. 13, 24, 22 Atl. 1061; *Skiff* v. *Stoddard*, 63 Conn. 198, 227, 26 Atl. 874, 28 id. 104. Moreover, Frank C. Shipman during the last ten years of his life was of full age and capacity and had an interest in the trust fund as a remainderman, and for the last four or five years of that period as the sole remainderman. During all this time he not only made no objection to the act of the trustee, but from time to time down to his death received from the trustee the fruits of his action. After this period of silence and acquiescence on the part of the intestate, those who have no other interest than as claimants to his estate cannot now be heard to raise an objection to the propriety of the trustee's action which the intestate never made. His acquiescence thus indicated must, apart from the finding of the court as to his ratification and confirmation, be regarded as expressing his approval of the change in the character of the fund and his co-operation in the destruction of the ancestral character of any of it which unconverted might have partaken of that character. *Smith* v. *Bayright*, 34 N. J. Eq. 424, 427.

The sale in 1904 was preceded by action of the Court of Probate and an order of sale issued by that court. It was, nevertheless, as distinctly an exercise of the power contained in the will as were the two sales which had no such accompaniment. The application to the court was not one made under the statute (General Statutes, § 253), independently of the will and to secure independent judicial authority to sell. The proceedings contain sufficient internal evidences of that fact to require no reinforcement by external considerations, which are also apparent. They were manifestly had to secure adjudication of the existence of the necessity upon which the will conditions the right to sell. The primal source of the power which was exer-

cised is that found in the will. The fitness of the occasion for the exercise of that power was alone brought to the adjudication of the court. The sale of 1904 had, therefore, the same effect in accomplishing a change in the character of the estate for all purposes as did those of an earlier date.

The objections made to the finding need not, in view of our conclusions, be considered.

There is no error.

In this opinion the other judges concurred.