## SPENCER v. LYMAN.

A contract by the owner of an undivided one-half of real estate to convey the entire title for a cash payment on the delivery of a warranty deed of the entire title, and deferred payments, which stipulates that the vendor will proceed diligently to complete the title, and that on his obtaining good title the purchaser will complete the payments, makes diligent proceedings by the vendor to complete title a matter precedent to a recovery of the balance of the purchase money.

Evidence **held** to justify a finding that a vendor contracting to convey the entire title, one-half of which he owned, acted with diligence to obtain the outstanding title, as required by the contract, entitling him to compel performance by the purchaser.

Where a vendor had incurred an expense of about $18,000 in attempting to procure a complete title, as required by the contract, and pending proceedings in court requested by the purchaser could not be completed within ·10 days, the notice of the purchaser requiring the vendor to complete the title within 10 days, or the purchaser would rescind the contract, did not effect a rescission of the contract.

Where a purchaser of land to develop coal mines thereon knew at the time of the making of the contract requiring the vendor, then owning an undivided half interest in the land, to proceed with diligence to procure complete title, that outstanding titles were owned by residents of a foreign country, and that some time must necessarily be consumed in procuring the complete title, and the contract did not specify the time to procure such titles, the vendor was entitled to reasonable time in which to procure the same, and, before the expiration of such time, the purchaser could not rescind the contract for the vendor's failure to perform.

A vendor having an undivided one-half interest in land contracted to sell the whole title, and to acquire the outstanding title of "George William Allen." The record title was in a third person, who filed a declaration of trust in favor of "George William Allen of a city in India. The will under which plaintiff deraigned title was according to its recitals that of Sir George William Allen, of Princess Gardens, in the county of London. The probate proceedings in England recited the will of Sir George William Allen, late of Princess Gardens, n the county of London; that the will was signed "Geo. W. Allen," and the acknowledgment stated that it was signed and acknowledged by Sir George William Allen. The deed from the devisees and trustees under the will, after naming the trustees, recited that personally and as trustees under the will of the late Sir George William Allen of Princess Gardens, in the county of London, formerly of the designated city in India conveyed the land. **Held** to show that "G. W. Allen," "Geo. W. Allen," and "Sir George William Allen" referred to the same individual, and that the vendor obtained a good title.

A certificate of the registrar of deaths showing the death of a person named, which certificate was certified to be a true copy of an entry in the certified copy of the register of deaths in a subdistrict, in the county of London, England, purporting to be sealed and stamped with the seal of the registrar's office and certified by the deputy consul general at London, and that the seal affixed was the seal of the general registrar's office, England, and which certificate recites that to all acts so sealed, full faith and credit are and ought to be given in judicature, and sealed with the United States consulate seal, is properly received in evidence.

Where a will named trustees with power to sell, and provided for a substituted trustee on the death of one of the trustees named,

and the court approved a sale made by the substituted trustee and the other surviving trustees, it must be presumed that the court had before it due proof of the death of such trustee.

A sale by executors under a will devising real estate to the executors absolutely to sell to pay debts and legacies is on a parity with a judicial sale, and the purchaser takes complete title of testator relieved of the burdens of administration, and the proceeds of the sale take the place of the real estate sold and becomes liable for the burdens of administration including the payment of debts and legacies, except with the possible exception of posthumous or pretermitted children.

A devise of real estate to executors to sell to pay debts and legacies operates as an equitable conversion of the real estate into personalty at the time of testator's death, and the creditors, heirs, and legatees must look to the proceeds of a sale for the satisfaction of their respective demands.

The courts in construing wills directing the sale of real estate consider the property as personal property, as of the date of a testator's death; and land devised to be sold and turned into money must be looked on as if testator had sold it in his lifetime.

A purchaser in good faith from a testamentary trustee authorized to sell and apply the proceeds acquires a good title, and need not see to the application of the proceeds.

A foreign testator devised land situated in the United States to his executors to sell and pay debts generally, except debts owing in a foreign country, and provided for special trustees of the property in such foreign country to sell to pay the debts therein, the surplus to be delivered to the executors. The executors sold the real estate in the United States. There was no evidenc of debts or of the existence of pretermitted or posthumous children, though several years had elapsed since the probate of the estate. **Held,** that the purchaser acquired a complete title because the bare possibility of the existence of debts or omitted or posthumous children was merely speculative, and not sufficient to cast reasonable doubt on the purchaser's title.

Where a foreign will operated to equitably convert real estate in the United States into personalty, the administrator in the United States was not entitled to the possession of the real estate, but was only entitled to the proceeds of the sale of the real estate.

The administrator of an owner of an undivided interest in real estate is not entitled to the possession of the estate as against the surviving owner.

Whiting, J., dissenting.

(Opinion filed June 6, 1911.)

Appeal from Circuit Court, Lawrence County. Hon. W. G. Rice, Judge.

Action by Joseph C. Spencer against William H. Lyman. From a judgment for plaintiff, defendant appeals. Affirmed.

*McLaughlin & Ogden* and *Martin & Mason,* for appellant. *John W. Lacey* and *Kellar & Stanley,* for respondent.

McCOY, J. This was an action to compel specific performance of a contract to purchase certain coal lands, about 800 acres, situated in Weston county, state of Wyoming, dated August 27, 1907. The plaintiff, Joseph C. Spencer, at the date of said contract, was the owner of an undivided one-half interest in and to the said lands, and by the terms thereof agreed to sell and convey to the defendant, William H. Lyman, the entire title to said lands in consideration of the sum of $40,000 payable as follows: $10,000 cash upon the delivery to defendant by plaintiff of a warranty deed of the entire title to the entire tract executed by plaintiff; to deliver to plaintiff $30,000 face value mortgage bonds of the Galesburg & Kewanee Electric Railway Company, with the option on the part of plaintiff, after investigation, to take in lieu of said railway bonds two secured promissory notes executed by the defendant, one for $15,000 due August 27, 1908, and one other for $15,000 due August 27, 1909, both drawing interest at the rate of 6 per cent. per annum. Immediately after the execution of said contract, plaintiff delivered to defendant a warranty deed purporting to convey to defendant the full fee title to said lands, and thereupon defendant paid to plaintiff the sum of $10,000 cash, and soon thereafter defendant went into actual possession of said land, and has ever since remained in the actual possession thereof. The said contract, among its other provisions, contained the following: "Whereas an undivided one-half of the said property is owned by Sir George Allen and brother of England, who have agreed to sell the said property for the price per acre herein contemplated and have authorized the said Spencer to sell and dispose of the same; and whereas there is an outstanding undivided 20 acres of said property owned by one Ann P. Kilbourne; and whereas the said party of the first part is selling the entire property herein described to the party of the second part and is executing and delivering warranty deed to the party of the second part

therefor; and, therefore, it is agreed that the said Joseph C. Spencer shall proceed diligently to obtain complete title to said undivided 20 acres, and to the undivided one-half interest in the entire property owned by said Sir George Allen and brother, and that upon his obtaining good and sufficient title to the said outstanding interest the said William H. Lyman will further complete the payment of the purchase price for said property according to the said terms of the said contract." After investigation, plaintiff elected to take the notes of defendant representing said deferred payments instead of said railway bonds, and duly notified defendant of said election, and upon defendant's refusal to pay the first of the said $15,000 payments, due August 27, 1908, plaintiff instituted this action to recover the said first payment of $15,000, and also to compel defendant to specifically perform by executing and delivering the second note for $15,000 due August 27, 1909, and demanded that, in case judgment was rendered after the time of the maturity of the second payment, plaintiff be awarded judgment in the sum of $30,000 and interest. The trial resulted in findings and judgment in favor of plaintiff for the recovery of a money judgment for $30,000 and interest. Motion for new trial was made and denied, and defendant has brought the case to this court by appeal, questioning the sufficiency of the evidence to sustain the findings and judgment, and also alleging error in the rulings of the court in the reception and rejection of testimony.

Appellant presents two general questions for review, by virtue of which he contends that the evidence is insufficient to justify the findings and judgment: (1) Plaintiff's lack of diligence in acquiring the outstanding titles to said property; (2) that the titles furnished are defective, and not good within the meaning of the terms of said contract.

[1] Appellant, as we think, correctly contends that the diligent proceedings to acquire such outstanding titles and the acquiring of good and suficient titles were matters precedent under the terms of said contract on the part of plaintiff before he would be entitled to recover the balance of said purchase price.

[2] It appears from the evidence, and seems to be conceded by appellant, that plaintiff very soon after the making of said contract and during the month of September, 1907, procured a deed and sufficient title from Ann P. Kilbourne to her undivided interest in the said 20-acre tract. About 15 months after the execution of said contract, respondent claims to have procured complete title of the interest of Sir George Allen and brother of England, and respondent further claims that in the procuring of the interest of said Allens he proceeded with all due diligence under the surrounding circumstances, and consumed no more time than was reasonably necessary to procure such outstanding title. The finding of the court that respondent proceeded with due diligence in obtaining said titles is fully sustained by the evidence. From the evidence it appears that both Sir George W. Allen and brother resided in England, and that the said Allen title was held for them in trust in the name of other parties, some of whom had resided in the United States and some in Calcutta, India. It also appears that at the time of the execution of said contract, although unknown to the parties thereto, said Sir George W. Allen and some of said trustees were deceased; that the said Allen estate situated in the United States was handled by agents with whom the plaintiff prior to the execution of said contract had transacted the business in relation to the lands mentioned in said contract. It appears that one John C. Baird, who in his lifetime had resided in the United States, was one of the trustees of the title to said land, and at his death left surviving him two sons, one of whom resided in Denver, Colo., and the other in Honolulu, Sandwich Islands, and that the successor of one Turner, also a trustee of said estate, resided at Calcutta, India. It also appears that said George W. Allen disposed of said estate by will, and that, to procure title to said lands, it was necessary that certain probate proceedings, which consumed much time, be had both in England and the United States. We do not deem it necessary to set out in detail all the testimony appearing upon the question of diligence, but, under the circumstances as shown by the evidence, we are satisfied that respondent acted with due diligence, and was in no manner at fault for any delays occasioned. It conclusively ap-

pears from the testimony that the probate proceedings and some other of the proceedings taken in perfecting said title were at the request of and required by appellant, who had notified respondent that said titles would not be accepted until such proceedings were had. On October 23, 1908, appellant served written notice on respondent that, unless said title was completed within 10 days, appellant would rescind said contract, and thereafter appellant also served notice of rescission of said contract, and tendered back to respondent a deed reconveying title to respondent.

[3] Appellant contends that under the authority of Keator v. Ferguson, 20 S. D. 473, 107 N. W. 678, the giving of such notice had the effect to make time of the essence of said contract so that appellant might rescind the same. But at the time this notice was served respondent had incurred an expense of about $18,000 in attempting to procure and complete said title, and the probate proceedings, requested by appellant, were then pending and in progress, and 10 days, under these circumstances, was wholly insufficient and an unreasonable time within which to require respondent to complete said titles and that therefore the said attempted rescission on the part of appellant was ineffectual.

[4] It is also contended by appellant that, by reason of the fact that it was known to all the parties to said contract at the time of the execution thereof that said lands were being purchased for the purpose of developing coal mines thereon, appellant, not being able to sooner acquire said titles, was compelled to suspend work in the development of said mines, and for that reason had the right to rescind said contract, but we are of the opinion that this position is not well taken, for the reason that it was known to appellant that some of said outstanding titles were held by parties in England, which necessarily meant that some time must be consumed in procuring said titles, and again respondent was not required by the terms of said contract to procure said outstanding titles within any particulary specified time, but, under the terms of said contract, was entitled to a reasonable time in which to procure the same.

[5] Appellant contends that the title procured by plaintiff of the interest of George W. Allen is defective, and is not such a title

as he is compelled to accept. No question is made as to the sufficiency of the title to the interest of the brother referred to in the ·contract. Appellant's first objection to plaintiff's title is based on his failure to show by record evidence the identity of G. W. Allen of Allahabad, India, and Sir George William Allen of No. 13, Princess Gardens, in the county of London. It appears that the record title to the said Allen interest was in John C. Baird, who made and filed a declaration of trust in favor of George W. Allen of Allahabad, India, and that the will under which plaintiff deraigns title is, according to its recitals, that of Sir George William Allen of No. 13, Princess Gardens, in the county of London. We are of the opinion there was sufficient evidence to show that "G. W. Allen," "Geo. W. Allen," and "Sir George William Allen," mentioned in the title papers in issue, was one and the same person, and that there is no reasonable doubt concerning such identity of persons, as would render the said title unmarketable or not a good and sufficient title. The probate proceedings in England recite the consideration of the last will and testament of Sir George Allen, late of 13, Princess Gardens, in the county of London; that the will was signed Geo. W. Allen, and the acknowledgment states that it was signed and acknowledged by the above-named Sir George William Allen. The deed from the devisees and trustees of the Allen estate under said will, after naming the trustees, says: "Personally and as trustees under the last will and testament of the late Sir George Allen, of 13 Princess Gardens, in the County of London, formerly of Allahabad, India." In addition to this, there is much other evidence in the record tending to show that G. W. Allen, Geo. W. Allen, and Sir George William Allen refer to but one and the same person.

Appellant next contends that there is no proof of death of Sir Charles Turner, one of the general trustees under the Allen will, and that this constitutes a valid objection to plaintiff's title. The will of Sir George William Allen named as trustees and executors George Berney Allen, Sir Charles Turner, James Allen, and William John Dare, with power to sell the land in question for the payment of debts, and also provided that, in case of death of said Sir Charles Turner, then his brother, Montague Cornish

Turner, be appointed trustee and executor in place of the said Sir Charles Turner. The deed from the trustees under the will of the land in question is signed by George Berney Allen, Montague Cornish Turner, William John Dare, and James Allen, the brother of Sir George William Allen, and appellant therefore contends that there is no proof of the death of Sir Charles Turner that would authorize the signing of said deed by Montague Cornish Turner, but we are of the opinion that this contention is not well taken, and that there is evidence sufficient establishing the death of Sir Charles Turner to have taken place on the 20th day of October, 1907.

[6] There was offered and received in evidence the certificate of the registrar of deaths, showing that Sir Charles Turner died October 20, 1907, which was certified to be a true copy of an entry in the certified copy of the register of deaths in the subdistrict of Mayfair, Knight's Bridge, in the county of London, purporting to be sealed and stamped with the seal of said registrar's office, and which is also certified to by the deputy consul general, United States of America, at London, England; that the seal affixed to the foregoing certificate is the seal of the general registrar's office, England, and such certificate recites that to all acts so sealed full faith and credit are and ought to be given in judicature; and sealed with the United States consulate seal. Appellant objected to the introduction of this record in evidence on the ground that it was not offered until after the close of the trial and after the court's oral decision for plaintiff, and because there is no provision making a copy of any such purported record evidence, and because it does not appear that the same consisted of an entry in the performance of a duty specially enjoined by law, and because the same appears to be a copy of a copy only; but we are of the opinion that the same was properly received in evidence and furnished sufficient proof of the death of Sir Charles Turner.

[7] It also appears that the said deed conveying the interest of Sir George William Allen to plaintiff, signed by said trustees, was confirmed by an order of the probate court of Weston county, Wyo., and it will be presumed that such court had before it due proof of the death of Sir Charles Turner.

Appelant next contends that plaintiff's title to the said Allen interest in said land is defective because the Sir George William Allen will was not probated in Wyoming until two months after defendant's formal notice of rescission of said contract of sale; but we are of the opinion, in view of the fact that said notice of rescission is held ineffectual, that this contention is unavailable.

[8] Appellant's last contention and objection to plaintiff's title is that there was no order or decree of distribution of any probate court having jurisdiction; that such an order or decree is essential to complete the title, in order, first, to bar creditors of the Allen estate; second, to bar the executors' right of possession; and, third, to judicially establish and determine the parties entitled to take under the will, the nonexistence of pretermitted children, etc., By the will of Sir George William Allen the property in question was devised absolutely to his said executors, or general trustees, to sell and convert into money and out of the proceeds pay funeral expenses and legacies and all general debts, excepting debts owing in India. The said executors or trustees under said will did sell and convey the said interest of Sir George William Allen to plaintiff, and which sale was confirmed by the probate court of Weston county, Wyo. It is conceded by appellant that the said executors or trustees took a fee-simple title to said property under said will, but appellant contends that the title so acquired by any devise under a will, although a fee simple, is nevertheless, subject to all debts of decedent, including expenses of administration, and subject to the right of possession in the executors for at least one year, and subject to the possibility of other claimants, pretermitted children, etc. We are of the opinion this contention is not tenable. A sale of this character by executors or trustees under a will is in parity, on the same footing, with a judicial sale; that, where there is jurisdiction or authorty to make the sale, the purchaser takes the complete title of the decedent, relieved of all burdens and liabilities of the administration under which the sale is made, and that the purchase price or proceeds of such sale steps in and takes the place of the property so dispensed of, and which proceeds become liable for the burdens of administration, for the payment of debts, legacies, etc.,

.and all of which in no manner concerns the purchaser at such sale, or in any manner affects his title, that the heir takes a distributive share of the proceeds, and has no title to the land after the decease of the ancestor (Starr v. Willoughby, 218 Ill. 485, 75 N. E. 1029, 2 L. R. A. [N. S.] 623), with the possible exception of posthumous or pretermitted children (Northrop v. Marquam, 16 Or. 173, 18 Pac. 449). The proceeds of the land, when the sale is fair, are just as available to the creditors as the land itself. The land could only be sold once to satisfy the debts, and, when that has been fairly done by the trustees and the proceeds turned into the channels of administration for the payment of debts, it would certainly be inequitable to again charge the same land with the payment of the same debts.

[9] Under the circumstances of this case, there was at the time of the death of decedent an equitable conversion of this real estate into money proceeds, which became personal property in the hands of the executors; that the creditor, heir, and legatee must look to the personal property money proceeds for the satisfaction of their respective claims and demands against the estate; that the situation is the same as if decedent had, in his lifetime, sold said real estate and died seised of the money.

[10] It is a well-settled rule in chancery in the construction of wills, as well as of other instruments, that, where land is directed to be sold and turned into money, courts of equity in dealing in the subject will consider it personal property as of the time of the death of decedent. 9 Cyc. 830-837, and cases cited; In re Earnshaw, 196 N. W. 330, 89 N. E. 825; Nelson v. Nelson, 36 Ind. App. 331, 75 N. E. 679; Talbot v. Snodgrass, 124 Iowa, 681, 100 N. W. 500; Hagen v. Sacrison, 123 N. W. 518, 26 L. R. A. (N. S.) 724; Gardner's Appeal, 81 Conn. 171, 70 Alt. 653; Burbach v. Burbach, 217 Ill. 547, 75 N. E. 519; Weintraub v. Siegel, 133 App. Div. 677, 118 N. Y. Supp. 261; West Virginia Paper Co. v. Miller, 100 C. C. A. 176, 176 Fed. 284. Land devised to be sold and turned into money must in equity be looked upon as if the testator had sold it in his lifetime and turned it into money. Hayfort v. Benlows, 27 Eng. Reprint, 375; 9 Cyc. 831.

[11] It also seems to be generally held that a purchaser in good faith, who has been guilty of no fraud in the transaction, from a trustee authorized to sell and apply the proceeds, acquires a good title, and is not bound to see to the application of the proceeds of such sale. 28 Am. & Eng. Ency. of Law, 1131; Pike v. Baldwin, 68 Iowa, 263, 26 N. W. 441; Goodwin v. Bank, 48 Conn. 550; White v. Cook, 73 Ga. 164; West Virginia Paper Co., supra; Weintraub v. Siegel, supra. This seems to be the same rule that is applicable to judicial sales generally. 28 Am. & Eng. Ency. of Law, 1132; 24 Cyc. 61-64; 18 Cyc. 820. In Perry on Trustees, §§ 794-798, the rule seems to be laid down that a purchaser from a trustee authorized to sell might be required to account to the creditor when the property so devised to be sold and the proceeds are directed to be applied to the payment of some particular specified debt, but, when the devise is to pay debts generally, the purchaser is relieved of all obligation to general creditors, who must look to the proceeds of the sale for the satisfaction of their debts.

[12] The devise in the case at bar was to sell and convert into money and pay all debts generally, excepting the debts owing in India. By the will it appears that a special set of trustees were appointed in respect to all the property of said George W. Allen situated in India, and that a portion of his property in India was devised to said special trustees to sell and convert into money, and from the proceeds thereof to pay all the general debts of decedent in India, and that the surplus of such proceeds arising from the sale of said land in India after the payment of debts should be transmitted to the general trustees of the estate, thus apparently showing that ample provision was made by such will for the satisfaction of the Indian debts and decreasing the probability that there are any such debts now in existence. The bare possibility in the absence of testimony showing the existence thereof that there might be debts that would constitute a charge on the interest of George W. Allen in said land is not sufficient to constitute a defect in the title, or to render the same insufficient or to cast a reasonable doubt thereon. The case of Moser v. Cochrane, 107 N. Y. 35, 13 N. E. 442, is directly in point on this propo-

sition. That action was brought by a purchaser of real estate to recover back the portion of the purchase price paid by him on the execution of the contract of sale on the ground that defendant had inherited the property from C., who died within three years, intestate; that the administration of his estate had not been closed, and that plaintiff would have to take the property subject to the debts of the intestate, if any there should be, after his personal estate was exhausted; also, to the possibility of the discovery of a will within four years after the death, which would govern the disposition of said property and render the conveyance void. Held that, to entitle plaintiff to relief, it was necessary for him to show debts, and an insufficient estate left by C.; that it was a bare possibility that this title would be affected by debts thereafter to be discovered. To the same effect is the case of Spring v. Sanford, 7 Paige (N. Y.) 550. In the similar case of Schermmerhorn v. Niblo, 2 Bosw. (N. Y.) 161, the court said: "As the law does not regard trifles, a bare possibility that the title may be affected by the existing causes which may subsequently be developed, when the highest evidence of which the nature of the case admits amounts to a moral certainty, if given, that no such cause exists, will not be regarded as sufficient ground for declining to compel the purchaser to perform his contract." Pomeroy on Contracts, subject of Specified Performance, § 204: "A doubt covering the vendor's title, therefore, which can avail to defeat his remedy of specific performance, must be reasonable, and so far as it depends upon contingent events and uncertain facts their occurrence or existence must be fairly probable." The general elementary law upon the question of reasonable doubt is that a mere possibility, a mere speculative possibility, is not sufficient to create a reasonable doubt. In the case of Ladd v. Weiskopf, 62 Minn. 29, 64 N. W. 99, 69 L. R. A. 785, the same questions were raised as in the case at bar, viz., the possibility of debts omitted and posthumous children, etc.; still, in the absence of any testimony of such possibilities, the title was held free from reasonable doubt. In the case at bar there is no evidence at all of any unpaid debts, nor any evidence at all of the existence, or probability of existence, of posthumous or omitted children that might affect the equitable

conversion of the real estate in question. But, on the other hand, it appears from the evidence that George W. Allen died in the year 1900, and that his estate has been probated both in England and Weston county, Wyo., and it is altogether probable that, if there were any such unpaid debts, omitted or posthumous child or children, the same would have been known and the rights thereof taken into consideration by the court which confirmed said sale, or that the evidence of such debts or the existence of such children would have been known and might have been the subject of direct proof on the trial of this case. The probability under the evidence of this case of unpaid debts or the existence of pretermitted or posthumous children is mere speculation, and not sufficient to cast a reasonable doubt upon the title procured by plaintiff under the terms of said contract.

[13] It is also contended that the administration under the Wyoming proceedings would be entitled to the possession of the land in question for at least one year, which would render plaintiff's title defective to that extent. Under the doctrine of equitable conversion, this could not be, because the proceeds of the sale of the land would go into the hands of the executors and not the land itself.

[14] Again, the defendant in this case, and his successor, the plaintiff, were joint owners in common of an undivided one-half interest, with the said George W. Allen and his administrator or executor would not be entitled to possession of the estate as against the other joint owners.

Having examined each and every assignment of error, and each and every allegation of insufficiency of evidence, we are satisfied that no reversible error exists. The judgment of the circuit court is affirmed.

WHITING, J. (dissenting). I agree with the foregoing opinion, except I do not believe that, without notice to creditors and an order of distribution in the probate court of Wyoming in the Allen estate, it can be said the plaintiff tendered a marketable title.

It must be borne in mind that the fee title to this land vested in the trustees. Their power to sell the land as trustees was in

no manner subject to control of the probate court, and, as such trustees, they had no duty to report their doings to such court. Consequently the purported order confirming their sale to Spencer was a nullity, and was not properly admissible as evidence of any fact therein recited. There is a distinction very marked between devising land to trustees to carry out certain objects of the devisor, even the payment of his debts, and appointing persons as executors, even if such executors are given full power to sell property without an order of court. Such an executor can go on and make the sale, but he sells as executor. He must report to the court and get an order of confirmation before title vests in purchaser. If, when the will was admitted to probate, these persons named as executors and trustees had been appointed executors by the Wyoming court, they then, as executors, could have made a sale that would have passed an unquestionable title whenever such sale had been reported and confirmed. But they sold as trustees. As trustees they held the legal title, but burdened with the administration of the estate, the payment of debts, etc., just the same as if the land had been devised to them free of any trust; and the mere fact that one of the trusts imposed upon them was the payment of debts of deceased (though mind you not the Indian debts) does not in any way void the right of creditors to have the property duly probated, thus giving to the creditors, including even the Indian creditors, the right to file their claims in court and be fully protected by the statutory provisions controlling such matters.

Suppose this property had all been willed to a son of Allen; the will had been admitted to probabte in Wyoming; no executor or administrator appointed; no notice to creditors given; no decree of distribution made—would any one hold that, under a contract for sale and purchase of land calling for a marketable title, a party would have to accept from the devisee a deed to land received by him under such will? I think not, and yet this is exactly the situation here— the trustees, like the son, get title through the will but subject to probate; the court could either probate in the usual manner, giving notice to creditors, and, after time had elapsed, if claims were filed and approved, order same

paid or require administrator to sell property to pay same, and then decree distribution to the trustees of balance of property, or the court might, without waiting, have allowed the trustees to give a bond securing creditors and then have made a decree of distribution setting over to them the lands. I do not believe a marketable title vested in the trustees or their grantees, any more than vests in any devisee under a will until there is due probation of the will and a decree of distribution.

Without the so-caled order of confirmation there is no sufficient proof of death of Sir Charles Turner. If Turner died when it is claimed he did, it was after Allen had died, and therefore Turner was prior to his death vested with fee title to this land; certainly there should be a decree of distribution showing that the remainder, after the life estate, had vested in the other Turner.